[No. 16365.    Department One.    August 8, 1921.]

A. D. ANDREWS, *Appellant,* v. ALETHA W. C. ANDREWS, *Respondent.*[1]

FRAUDS, STATUTE OF (18)—CONTRACT TO DEVISE—PERFORMANCE. An oral promise to make a will in favor of another is enforcible, if founded upon a valuable consideration and deliberately entered into by the deceased, where there has been a full or partial performance of the contract on the part of the promisee; but it must be supported by the strongest evidence of a valuable consideration.

APPEAL (348, 373½)—ASSIGNMENT OF ERROR—REVIEW—TRIAL DE NOVO. Where an equity case is tried *de novo* on appeal, the court has power to reject incompetent evidence in the record which had been admitted in favor of the appellant, and upon which there is no assignment of error.

WITNESSES (41-1)—COMPETENCY—TRANSACTIONS WITH PERSONS SINCE DECEASED—PARTY IN INTEREST. An agreement by a father to will his property to his son in return for the care and support of his parents could not be proved by the testimony of the son's wife, inasmuch as the property to be acquired would constitute community property, being dependent on the rendition of services by the community composed of the son and his wife; and her testimony would be barred under Rem. Code, § 1211, prohibiting a party in interest from testifying in his own behalf as to any transaction with or statement made by a deceased person.

HUSBAND AND WIFE (57)—COMMUNITY PROPERTY—EARNINGS OF HUSBAND AND WIFE. Property to be acquired by a husband under a contract for its devise in return for services rendered would be community property and not be in the nature of a gift, within the meaning of Rem. Code, § 5915, declaring that property and pecuniary rights acquired by a husband "by gift, bequest, devise, or descent" shall constitute his separate property.

Appeal from a judgment of the superior court for King county, Jurey, J., entered October 9, 1920, in favor of the defendant, in an action on contract, tried to the court. Affirmed.

[1] Reported in 199 Pac. 981.

*Jas. A. Dougan* and *William A. Gilmore,* for appellant.

*Thomas H. Bain,* for respondent.

BRIDGES, J.—A. D. Andrews brought this suit for the purpose of establishing and enforcing an alleged oral contract with his father, Joshua Andrews, to the effect that the latter would, by will or otherwise, at the time of his death, give to the plaintiff all property then owned by him. Upon a trial on the merits, the lower court dismissed the action, and the plaintiff has appealed.

The direct and surrounding facts are as follows: Joshua and Harriet Andrews were, respectively, the father and mother of the appellant, and lived in the city of Seattle, while the appellant with his family lived in West Seattle. This was in 1903. At that time, Joshua and his wife owned certain lots in the city of Seattle, on which they lived. Mrs. Andrews, senior, was afflicted with cancer, and for many months the wife of the son, A. D. Andrews, daily at times, and at other times less frequently, went to the home of Mrs. Andrews, senior, and nursed her and took care of her wants. After some months of this manner of care, it was agreed between the two families that Joshua and his wife should move to West Seattle and live in the home of their son and his family. This contemplated move was made sometime in 1903. The mother continued to reside in the home of her son until her death, and the father lived there much longer.

In the early part of January, 1904, it became apparent that Mrs. Andrews, senior, was approaching death, and she desired to make disposition of her property. She seems to have felt herself much indebted to her son and his family for their services to her in

her long and serious sickness, and it was her desire that they should be compensated. During January, 1904, she made a will giving all of her property to her husband, but in the will expressed the desire that, at the death of her husband, the property should go to their son, the appellant. For some reason which is not made clear from the testimony, at the same time Mrs. Andrews, senior, made her will, she and her husband made a deed to appellant covering the property then owned by them, and immediately thereafter appellant executed a quitclaim deed of the same property to the father, Joshua Andrews; apparently the deeds were made with the view of vesting in Joshua the full title to the property. Mrs. Andrews, senior, died within a month or two after making her will. The appellant alleges that, at the time Mrs. Andrews, senior, made her will, and at the time of the execution of the deeds above mentioned, it was orally agreed between Joshua Andrews and the appellant that the former should continue to live with the latter and receive his care and attention for such length of time as Joshua should desire to live with him, in consideration of which Joshua orally agreed that, at the time of his death, he would will all of his property to his son. This alleged oral agreement was made, if at all, on the 2d of January, 1904.

After the death of his wife, Mr. Andrews, senior, continued to abide with the son and his family until about the middle of the year 1905, when the son, for business reasons, went to Nome, Alaska, with a view to remaining there for at least several years. Mrs. Andrews, junior, however, continued to reside in the West Seattle home until July, 1906, when she and her family moved to Nome. During all of the time previous to the departure of Mrs. Andrews, junior,

Joshua lived with her in her home and she took care of him and furnished him board. When the son's family went to Nome they solicited the father to go with them and agreed to give him a home there. In fact, the testimony shows that arrangements at Nome had already·been made by the son for the proper care of his father. The latter, however, deemed himself too old to make the trip' or to live in the rigorous climate of the far north, and refused to accompany the family thence. He continued, however, to live at the son's home in West Seattle, but took care of himself and paid his own living expenses, until 1908, when he was married to the respondent. Shortly thereafter he and his wife took up their residence in the city of Seattle, where they continued to reside until his death several years after. Long after the appellant and his family moved to Nome, and on November 20, 1907, Joshua undertook to make his will. That instrument, however, was void as a will because it had but one witness instead of two, as required by statute. This purported will gave certain small sums to the children of appellant, and all remaining of the estate to the appellant. Still later, and long after he was remarried, and ·on August 20, 1918, Joshua attached a codicil to the previous will, modifying it to the extent of giving his wife $500 in cash, the household furniture, and the use of the homestead for a period of five years. Except as indicated in the codicil, the will was left as originally written. This codicil was also illegal because it had but one witness.

All the briefs in the case refer to a memorandum opinion of the trial court and quote extensively therefrom, referring to it as part of the record. It is not, however, a part of the record, but from the assertions in the briefs, we take it that the trial court found as a

fact that the oral contract was made substantially as contended for by the appellant, but that the latter breached it by moving to Nome.

This court has more than once held that an oral contract of the character here mentioned is enforcible notwithstanding the statute of frauds, if there has been full or partial performance. In fact, that question seems to be so well settled in this court that we deem it unnecessary to do more than cite some of the cases: *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465; *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572; *Worden v. Worden,* 96 Wash. 592, 165 Pac. 501; *Swash v. Sharpstein,* 14 Wash. 426, 44 Pac. 862, 32 L. R. A. 796. In the *Lewes* case we said:

"Cases of this kind are not favored, and when the promise rests in parol are even regarded with suspicion, and will not be enforced except upon the strongest evidence that it was founded upon a valuable consideration, and deliberately entered into by the deceased. But while not favored and rarely enforced upon oral proofs, the power to make a valid agreement to dispose of property by will in a particular way has long been recognized."

The first question we must discuss is whether the original contract was made. It is a well settled principle of law that contracts of this character must be established by clear and convincing evidence. The appellant undertook to establish the existence of this contract by the testimony of his wife. At the trial the respondent objected to her testifying concerning any conversations on this subject had between Joshua Andrews and the appellant, for the reason that the appellant's wife was a party in interest. The respondent's objections were overruled. The appellant neither in his brief nor in his oral argument touched the question as to the competency of his wife to testify

concerning the contract, and the respondent makes no further argument on the subject than that his "objections to all of her testimony should have been sustained. She was the wife of the plaintiff and therefore vitally interested. She will surely be benefited if he prevails in this action." The question, however, is foremost in the case and must be decided. While the judgment of the lower court ran in favor of the respondent, against whom this witness testified, and respondent has not appealed, yet this is an equity case and we must hear it *de novo;* consequently, we must consider only such testimony as is competent. Section 1211, Rem. Code, is as follows:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of an action, as a party thereto or otherwise; but such interest may be shown to affect his credibility: *Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator, or legal representative of any deceased person, or as deriving right or title by, through, or from any deceased person, or as the guardian or conservator of the estate of any insane person or of any minor under the age of fourteen years, then a party in interest or to the record shall not be admitted to testify in his own behalf as to any transaction had by him with or statement made to him by any such deceased or insane person, or by such minor under the age of fourteen years. . . ."

This court has expressly held that, if a like oral contract with the husband was concerning community property, or if the property sought to be acquired by the suit would be community property when acquired, then the wife is an interested party and is forbidden by the statute to testify concerning the contract. In the case of *Whitney v. Priest,* 26 Wash. 48, 66 Pac. 108, the facts were as follows: Whitney was a physician

and surgeon and claimed to have entered into a verbal contract with Harriet S. Priest, agreeing to perform certain professional services for her, for which she agreed to pay him an agreed amount. She subsequently died, and Whitney instituted suit against her estate to recover the amount of the alleged agreed compensation. He undertook to prove by his wife the conversations between himself and Mrs. Priest concerning the amount of compensation agreed to be paid. After quoting the statute, we said:

"The plaintiff and the witness Josephine Whitney were husband and wife. The professional services which were the subject of contract between plaintiff and the deceased involved the community interest. The compensation for such services belonged to the community. Mrs. Whitney was interested equally with her husband. She must necessarily be said, therefore, to be a party in interest, and the transaction and the statements made to plaintiff must equally involve his wife. The witness then falls within the disability of the proviso of the statute, and it was error to admit her testimony as to the transaction and statements made by the deceased to the plaintiff."

The whole question here, then, resolves itself into the proposition whether the property which the appellant sought to recover would have been, had he succeeded in recovering it, community property or his separate property. If it would have been community property, then the wife was a party in interest and could not testify, and the objection of the respondent should have been sustained.

We are convinced that the property sought to be acquired by this action would have been community property had it been acquired. Section 5915, Rem. Code, defines the separate property of the husband as follows:

"Property and pecuniary rights owned by the husband before marriage and that acquired by him afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof, shall not be subject to the debts and contracts of his wife, and he may manage, lease, sell, convey, encumber or devise by will, such property without the wife joining in such management, alienation or encumbrance, as freely and to the same extent as though he were unmarried."

Section 5916, Rem. Code, defines in substantially the same words the separate property of the wife. Section 5917, Rem. Code, defines community property as follows:

"Property, not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by either husband or wife, or both, is community property."

The main question is, was the property sought to be obtained by this suit acquired by "gift, bequest, devise or descent," within the spirit of the statute?

We are satisfied that it would not have been so acquired. It would have been acquired by contract. There is no element of gift, bequest or devise involved in this case. Joshua Andrews, according to the alleged agreement, was to will his property to his son for a consideration, and that consideration was that the latter was to maintain and support him during the remainder of his life, or such portion thereof as he might elect to accept such maintenance and support. The testimony was that the services to be performed in payment of the property to be acquired were performed by the appellant and his wife. It was their community property which housed and sheltered Joshua Andrews; it was the community money of the appellant and his wife which furnished, and was to furnish, the table from which Mr. Andrews, senior,

was to eat. The testimony shows that the appellant's wife did the housework and cooked the food, and did the other usual duties in the maintenance of the home, and in the care and attention given to Mr. Andrews, senior. Everything that went into his maintenance was the joint effort of the appellant and his wife. In no true sense was the appellant to acquire this property by gift. He was to acquire it by virtue of a contract which was to be performed on the one side by himself and his wife. Bouvier's Law Dictionary defines "Gift" as a "voluntary conveyance or transfer of property; that is, one not founded on the consideration of money or love. A voluntary, immediate, absolute transfer of property without consideration." The "gift, bequest, devise or descent" contemplated by the statute as constituting separate property is not based upon contract or consideration, and property willed by one to another in compliance with a contract between the parties is not a gift or bequest in contemplation of the statute. If the appellant had alleged and shown that the contract was a personal one between his father and himself and was to be performed, and was performed, by means of his separate property and his individual endeavors, then the property to have been acquired might have been his separate property, and his wife might have testified as to the terms of the contract. But this situation is not before us and we do not decide it. But, even in that instance, it would be his separate property by purchase, and it would not have been his by gift, devise or descent within the spirit of the statute. If the alleged contract had been made by the appellant with a stranger and not with his blood relation, then it would seem to us that everyone must say that the property to be acquired under it would be community property, because

we. have always held that property acquired by the joint efforts of the husband and wife is presumed to be community property. The mere fact that it is alleged that the contract here was made with the appellant's father could not change the legal situation, and the legal effect must be the same as if the contract had been made with entire strangers.

Without the testimony of the appellant's wife, there is not sufficient evidence upon which to base any contract. While the self-sacrifice made by the appellant, and particularly by his wife, is to be highly commended, the rules of law forbid them any compensation.

The judgment must be affirmed.

PARKER, C. J., MACKINTOSH, FULLERTON, and HOLCOMB, JJ., concur.