[No. 17825.    Department One.    January 3, 1924.]

IDA OLSEN, *Appellant*, v. EVA L. HOAG, *as Executrix, etc., Respondent.*[1]

WILLS (8)—CONTRACTS TO DEVISE—CONSIDERATION—SUFFICIENCY. The advancement of money to, and maintenance and care of, a sick person is sufficient consideration to support an oral agreement to devise property in return for life support.

SAME (8). There is sufficient evidence to support an oral promise to devise property for life support and to create a trust therefor, where it appears that support and maintenance was furnished and money advanced to the testator who made the will as agreed upon and stated that it was all right to take the support and the advances because all his property would belong to the devisee; and it is immaterial that he afterwards sold part of his property.

SPECIFIC PERFORMANCE (25)—CONTRACTS TO DEVISE—CONSIDERATION. Specific performance lies to enforce an oral agreement to devise lands for life support, and inadequacy of consideration is not a sufficient objection thereto.

TOLMAN, J., dissents.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered October 4, 1922, upon findings in favor of the defendant, dismissing an action for specific performance, tried to the court. Reversed.

*Lucius G. Nash*, for appellant.

*R. L. Edmiston*, for respondent.

[1]Reported in 221 Pac. 984.

Holcomb, J.—This suit was brought to enforce specific performance of an oral contract to devise real and personal property to appellant.

The complaint alleges that, on February 28, 1921, Mary E. Cooney, mother of Roberts J. Cooney, died, and thereafter up to September, 1921, Roberts J. Cooney lived with appellant in her home, and that she provided him with room and board; that he was ill, frail, unable to do manual labor, and appellant nursed him, provided medicines, attended to all his wants, and gave him three hundred dollars in money; that, prior to Mrs. Cooney's death, appellant had nursed her, and during her last illness was with her day and night, and to compensate appellant she demanded of her son that he make his will, naming appellant the sole beneficiary thereof; that, after Roberts J. Cooney came to live with appellant, in consideration of the demand and promise made his mother, and in consideration of the room, keep, nursing, care, attention, and money advanced him by appellant, he did, on August 20, 1921, make and deliver to plaintiff his will containing the following:

"I hereby give, bequeath and devise unto Ida Olsen of Spokane, Washington, in view of numerous kindnesses extended to me and certain obligations to which I am indebted to her, all my property, both real and personal of which I may be and now own and possess, no matter where same may be situated."

That appellant carried out her bargain fully, and Cooney left her home voluntarily on September 20, 1921.

The answer of respondent denies the foregoing allegations, and sets up affirmative matter not material at this time.

The court found that Cooney, a single man, died in Spokane on October 26, 1921, leaving his last will, wherein respondent was named as sole devisee of his

entire estate, and that the will was duly probated in Spokane county on November 1, 1921; that the estate was duly appraised in the sum of $3,350, and respondent is the qualified and acting executrix thereof. The court further found that both appellant and respondent extended neighborly kindness, aid and comfort to Mrs. Cooney, mother of Roberts J. Cooney, who died on February 18, 1921, in Spokane, during her declining days, and continued such kind treatment of Roberts J. Cooney during his lifetime. The court also found that Cooney, after the death of his mother and his removal to the home of appellant, aided her more or less in the conduct of her grocery business for which he had received no pay, until about September 20, 1921, when appellant caused his removal from her home by reason of his intemperate use of intoxicating liquor, with which habit he had been afflicted at intervals for a number of years. The court also found:

"That while portions of the evidence tend to show that Roberts J. Cooney made statements to the effect that he was going to will all of his estate to plaintiff, the evidence, taken as a whole, fails to show that at any time and place any specific agreement, oral or otherwise was ever entered into between said plaintiff and Roberts J. Cooney that was sufficiently definite to be binding or enforced in any manner, and that the will set up in the complaint fails to set forth facts sufficient to constitute any such agreement or to be of force and effect other than an ordinary will to be wholly overcome and revoked by subsequent will."

From the above findings the court, of course, concluded that appellant had failed to establish a contract, oral or otherwise, and failed to establish any trust in favor of appellant against the estate of deceased, or any right to the estate of the deceased, or any portion thereof or interest therein, and that respondent was

entitled to judgment and decree dismissing appellant's action in all respects.

We do not know in what respects the court considered the oral contract alleged in appellant's complaint was indefinite, nor whether the court considered that a definite time and place were necessary to be proven in order to establish such a contract.

Having great respect for the learned trial court, the entire record has been read. We are impressed that no one can read the record without being convinced that there was such a contract. The time and place of making was not proven. Manifestly it must have been made after the death of Mary E. Cooney, which was February 28, 1921, and prior to the execution of the will in favor of appellant, which was August 20, 1921. The place is immaterial.

Of course appellant could not testify, and the trial court did not permit any testimony as to conversations and transactions between her and the deceased relating to the contract, which were incompetent under our statute.

The evidence, however, shows very convincingly that both appellant and respondent were strangers to the blood of Mary E. Cooney and of Roberts J. Cooney. Appellant had known the Cooneys for some six or seven years, and by the overwhelming testimony had given great care, assistance and comfort to Mrs. Cooney, which was evidently greatly appreciated by Roberts J. Cooney. Respondent had known Mrs. Cooney less than a year. No great assistance or care had been given by her or her husband to Mrs. Cooney, or to the son. Upon the death of his mother, Roberts J. Cooney immediately went to the residence of appellant, who took him in, cared for him when he was ill, which was often, let him work when he pleased,

which was not much, and gave him her own room, and the best care and comfort she could so long as he remained with her. It is true that she said she found that Roberts was using liquor and becoming intoxicated, and that she had six children, three of them staying with her all of the time, and some of them young children, and she could not allow him to stay there and continue such habits. Apparently she remonstrated with him mildly several times, but did not order him out of her home. He may have been conscientious enough that he did not desire to corrupt her children by his example, or bring liquor unlawfully into her home and possibly cause her trouble, and therefore left. At any rate, about three weeks before his death he left her home. Apparently he went back to his own house and remained there for a while, and then was taken by respondent and her husband. He sold one tract of real estate in Spokane and gave a power of attorney to handle his money and negotiable instruments to the husband of respondent. This was delivered to his attorney-in-fact about 4:00 p. m. on October 26, and on the next morning the body of Cooney was taken from the river.

The evidence shows that Mr. Lavin, a lawyer of Spokane, was approached by Cooney himself and told the circumstances surrounding him, and that he desired to make his will in favor of appellant. The lawyer was never approached by appellant. She did not procure the making of the will. The will was drafted by the lawyer according to the directions of Cooney, and was duly executed in the presence of witnesses, and then delivered to appellant. It is true she kept it and did nothing about it until about six months after the probate of the will in favor of respondent.

It is asserted by counsel for respondent to be somewhat surprising that Cooney, after making the will in

favor of appellant, offered his real estate for sale and sold a portion thereof, gave his deed, talked with appellant about it, upon which she made no protest, and got and asked for no portion of the money. There is nothing astonishing about that. If there were a contract between appellant and the deceased, the contract, as represented by the will that he made and delivered to her, was that he gave and devised unto her all the property, both real and personal which he might own or possess. She might have understood and believed that he would have the sole use and benefit of all the property that he then owned, and that she would get all of which he died possessed, and no more.

Numerous witnesses testified as to various declarations made by the deceased. They were varying, of course according to the circumstances, but were always to the effect that it was alright for him to take money from appellant, and for her to support and care for him, as all he had would be hers some day. Cooney seems to have taken a great interest in the small grocery business operated by appellant, and assisted her in arranging the goods on the shelves, and performed some insignificant services, occasionally waiting on customers. He also showed appellant's oldest son how to keep the books. He also personally entered various items of cash which he took from the cash drawer or till, and various articles of merchandise. It is true that the books do not show that appellant had advanced to Cooney the $300, but they do show that she had advanced him about $175, and that there were other items that she did not keep account of. There is evidence that he was told at one time that he had obtained about $300, and that he replied that it need not make any difference about the money, because what he had was going to be hers some day.

While the various declarations made by decedent to the effect that appellant was to have all the property that had come to him from his mother are not disputed, possibly because of the very impossibility of disputing them, there is also the significant corroboration of the will itself. There the solemn declaration was made that, in view of the numerous kindnesses and certain obligations for which he was indebted to appellant, he devised and bequeathed all his property to her.

Of course, this was a mere will and revocable at pleasure, and it was revoked by the execution of the subsequent will; yet the subsequent will could do no more than any other alienation of property, and if the property was subject to an enforcible trust, it also could have no effect.

From all the evidence in the case, it is absolutely certain that there was sufficient consideration for the making of such a contract for the testamentary disposition of the property. The evidence and circumstances also are convincing that the contract was definite enough; that it was one for maintenance and care by appellant for the deceased during his own lifetime, which apparently would not be for any great length of time. He was also advanced money which appellant needed in her business and for her family, but which the deceased always insisted upon according to his needs, with the declaration that it would be all right, appellant would get all of his property anyway. These facts seem to us to establish a definite oral, enforcible contract.

We held in *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465, that an oral agreement to devise a ranch in consideration of the care, services and nursing during the life of the decedent, who was ill and required much help, is clearly established where many disinterested

third persons of undoubted veracity testified to numerous statements made by the decedent to the effect that defendant was to have the land for his services, and the contract was certain as to the parties, the property and the services, although not certain as to how the title was to pass, which was not essential.

We also held in *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572, in a suit to enforce specific performance of a contract to devise real property, that an agreement to make a will is within the realm of contract right, and the fairness of the agreement must be determined by resort to the relations of the parties and the attending circumstances, and past favors may be adopted as a part of the consideration. That inadequacy of consideration is not a sufficient objection to specific performance of a contract to devise lands for life support, since the testator may, in the absence of fraud, fix upon any lawful consideration sounding in personal service. In a like case in Nebraska, *Teske v. Dittberner,* 70 Neb. 544, 98 N. W. 57, Holcomb, J., said:

"The validity of such an agreement when made upon consideration, and free from objections that may be urged against all contracts, is beyond question. They have been upheld and enforced from an early period." Citing cases.

In addition to the cases cited in the foregoing cases, see, also: *Walker v. Yarbrough,* 200 Ala. 458, 76 South. 390; *Sumner v. Crane,* 15 L. R. A. 447; *Kelley v. Devin,* 65 Ore. 211, 132 Pac. 535; *Oles v. Wilson,* 57 Colo. 246, 141 Pac. 489; *Lawrence v. Prosser,* 88 N. J. Eq. 43, 101 Atl. 1040.

From the facts and the law as established in this state, we are convinced that appellant is entitled to establish the trust set up in her complaint.

The decree is accordingly reversed, and remanded

with instructions to enter a decree in favor of appellant.

MAIN, C. J., PARKER, and MACKINTOSH, JJ., concur.

TOLMAN, J., dissents.