[No. 27767. Department Two. January 30, 1940.]

ELSIE M. LUTHER, *Respondent,* v. NATIONAL BANK OF COMMERCE, *as Executor and Trustee, Appellant.*[1]

[1]Reported in 98 P. (2d) 667.

*Josiah Thomas* and *Gail M. Williams,* for appellant.

*F. C. Kapp, Weter, Roberts & Shefelman,* and *Victor D. Lawrence,* for respondent.

STEINERT, J.—Plaintiff brought suit against the executor of an estate to enforce specific performance of an oral contract wherein the decedent had agreed to devise his entire estate to plaintiff. Upon a trial without a jury, the court made findings, drew conclusions, and entered a decree granting the relief sought. The executor has appealed.

There is no dispute as to the facts. The assignments of error raise only questions of law. We can make no better statement of the case nor portray a clearer pic-

ture of the situation than those presented by the court's own findings. We therefore quote them verbatim.

"I

"That at all times hereinafter mentioned the defendant, The National Bank of Commerce, was and now is a national banking association, organized and existing under and by virtue of the laws of the United States of America, with its principal place of business in Seattle, Washington. That H. P. M. Luther died May 13, 1938, leaving a will appointing the defendant the executor and trustee thereunder. That by an order duly entered on May 18, 1938, said will was admitted to probate in the superior court of the state of Washington for King county in cause No. 70136, and the defendant was confirmed as executor thereof. That the defendant duly qualified, and has at all times since May 18, 1938, been and still is the duly appointed, qualified and acting executor of the last will and testament of the said H. P. M. Luther, deceased.

II

"That Ida A. Luther, the first wife of the said H. P. M. Luther, died intestate at Seattle, Washington on or about November 9, 1925, leaving her said husband and their only child, India Luther Ceis, as her sole heirs. That the estate of the said Ida A. Luther, deceased, was administered in cause No. 38758 of the above entitled court, wherein such proceedings were had that a decree was entered on or about February 19, 1927, distributing the property of said estate, appraised at $102,605, share and share alike, to said H. P. M. Luther, her husband, and said India Luther Ceis, their daughter. That prior to the death of Ida A. Luther she and her husband, H. P. M. Luther, had lived together in their family home in Seattle, Washington, an undivided one-half interest in which was inherited by, and thereafter in the aforesaid decree of distribution was distributed to, their said daughter, India Luther Ceis. That at the time of the death of Ida A. Luther, her said husband was about sixty-two years of age and did not desire to live alone. That accordingly, shortly after the death of his wife, his daughter, India Luther Ceis, her husband, Fred J.

Ceis, and their two children, moved from their home and went to live with H. P. M. Luther in the old family home in Seattle, Washington, at his invitation and request. That some months thereafter differences, both of a business character with reference to the property of the estate of the deceased Ida A. Luther, and of a personal character, arose between H. P. M. Luther, on the one hand, and his daughter and her family, on the other, which, during the late spring of 1928, culminated in his daughter's informing him that 'three generations cannot live under one roof.' That at this time H. P. M. Luther was about sixty-five years of age, suffering from angina pectoris and arteriosclerosis, and was subject to frequent dizzy spells. He had a horror of hospitals and insisted that he be cared for at home. That because of these differences with his daughter and her family and because of his physical condition, H. P. M. Luther was worried and apprehensive of his future welfare and comfort, and he desired to secure a competent nurse and housekeeper to nurse and care for him during his remaining days.

### III

"That for more than twenty years prior to June 1, 1928, plaintiff had been entirely self-supporting, making a living for herself and raising and educating her three children by nursing and by operating her own hospital. That for approximately thirteen years immediately preceding June, 1928, she had owned and successfully operated a hospital in Seattle, from which she had made a comfortable living, netting from $175 to $250 per month, in addition to the living expenses of herself and her dependents, consisting of a daughter, two sons, and an invalid grandson; and from these earnings, her only source of income, plaintiff had educated her three children, sending a son through dental college and her daughter through three years of the University of Washington. That early in May, 1928, an acquaintance introduced H. P. M. Luther to plaintiff at her hospital. After several visits with her, and after making inquiries about her, he became satisfied that she was an experienced nurse and housekeeper and well fitted by education, training and experience

to give him the kind of care and attention he would require during the remaining years of his natural life, and that she was the type of person that he was seeking, provided he could persuade her to give up her hospital and undertake his care in a private home.

## IV

"That early in the month of May, 1928, H. P. M. Luther made plaintiff the proposition that if she would agree to give up her hospital, and nurse and care for him the rest of his life, never sending him to a hospital should his condition become more serious, but always nursing him at home, he, in return, would build her a nice home and deed it to her, would provide a good living for her, and in case he should predecease her, would devise and bequeath to her all the property of which he should die possessed, except for nominal bequests of $5.00 to his daughter, India Luther Ceis, and $1.00 to his son-in-law, Fred J. Ceis. Plaintiff hesitated to accept this offer and to give up her hospital, an established business and her sole source of income. She therefore consulted with friends and acquaintances, seeking advise. However, H. P. M. Luther persisted, and repeatedly endeavored to persuade plaintiff to accept his proposition and attempted to enlist her sister and other of her friends to prevail upon her to accept.

## V

"That about the 1st of June, 1928, the plaintiff accepted H. P. M. Luther's said offer, and immediately set about the performance of her part of the contract. She closed her hospital, dismissed her patients and refunded their money, sold her surgeon's table, and disposed of her other hospital equipment to her sister, and by the 7th of June, 1928, her hospital had been disposed of. That on June 13, 1928, after the hospital had been disposed of by plaintiff as aforesaid, pursuant to said agreement, and after arrangements for moving into the Walnut street home had been made, H. P. M. Luther suggested that people might gossip about their living together under the same roof, unmarried, and stated that so long as the plaintiff was to live with him for the rest of his life under their agreement, they might

as well be married and prevent such gossip. Plaintiff respected H. P. M. Luther's wishes in this regard, and they were married on June 15, 1928. H. P. M. Luther was then sixty-five years of age and ailing and decrepit, and plaintiff was then fifty-six years of age. There was no romance connected with the marriage. There was no intent to abrogate the existing agreement.

## VI

"That plaintiff carried out her part of the aforesaid oral agreement in every particular, immediately disposing of her hospital as aforesaid, and for the ten years between the time of the making of the agreement and the death of H. P. M. Luther on May 13, 1938, plaintiff was ever solicitous of his best interests and gave him the very best of care. That during the last several years of his life H. P. M. Luther became greatly enfeebled in body and mind, necessitating a great deal of hard work by plaintiff in caring for him. That nevertheless plaintiff continuously lived with, nursed and took the very best of care of H. P. M. Luther until his death. That during H. P. M. Luther's final illness, which lasted about three weeks, plaintiff refused to permit him to be taken to a hospital, although the attending physician so advised for the sake of her health, but she nursed and cared for him in their home. That H. P. M. Luther remarked to many people at various times during the ten years plaintiff nursed and cared for him that he was glad that he had made the agreement with her, that she was a wonderful nurse and housekeeper, that she took the best of care of him, that she had performed her part of their agreement, and that he was going to live up to his part of it.

## VII

"That in the performance of his part of the aforementioned agreement H. P. M. Luther built a nice home on Sunset avenue in West Seattle, and always spoke of it as 'Elsie's home,' referring to plaintiff. That he, however, *failed* to deed the home to her. That after entering into the agreement and until his death H. P. M. Luther provided plaintiff with a good living, except that during the last few years of his life he did not provide as well as formerly. That in his will,

executed April 15, 1936, approximately two years prior to his death, H. P. M. Luther failed to carry out and perform the aforesaid agreement to devise and bequeath his entire estate to plaintiff, with the exception of bequests of $5.00 and $1.00 to his daughter, India Luther Ceis, and his son-in-law, Fred J. Ceis, respectively; but that on the contrary, H. P. M. Luther bequeathed to the plaintiff only some household furniture, worth and appraised in said probate cause No. 70136 at $100, out of an estate appraised at approximately $20,000.

## VIII

"That the defendant commenced the publication of notice to the creditors of H. P. M. Luther, deceased, in said cause No. 70136 on May 21, 1938; that on September 15, 1938, within six months thereafter, the plaintiff served on defendant and filed in said cause No. 70136 her duly verified claim for the entire estate of H. P. M. Luther, deceased, pursuant to the aforesaid agreement. That defendant rejected this claim in toto on October 6, 1938, and notified the plaintiff thereof. That by an order duly entered on October 20, 1938, in said cause No. 70136, plaintiff was permitted to institute this action, and within thirty days from the rejection of said claim plaintiff commenced this action by the filing of the summons and duly verified complaint herein with the clerk of this court on October 26, 1938, and the service of a copy of said summons and complaint upon the defendant on October 27, 1938."

The findings are not only sustained by the positive testimony of a concourse of disinterested witnesses, but are unassailed by any testimony or inferences to the contrary. We may add that the evidence establishing the agreement between the contracting parties did not include the testimony of respondent herself, for the reason that, under the bar of Rem. Rev. Stat., § 1211 [P. C. § 7722], and at the instance of appellant, respondent was precluded from testifying as to any conversations or transactions had with the deceased.

In discussing the questions involved upon the ap-

peal, it is well to have in mind the exact terms of the contract sought to be enforced. As shown by the findings above quoted, respondent agreed (1) to give up her hospital; (2) to nurse and care for decedent the rest of his life; and (3) never to send him to a hospital, should his condition become worse, but always to nurse him at home. In return, decedent agreed (1) to build her a "nice" home and thereafter deed it to her; (2) to provide her a good living; and (3) in case he should predecease her to devise and bequeath to her all the property of which he should die possessed, with the exception of certain nominal bequests. The provisions relative to building a nice home and providing respondent with a good living while the parties were both living and dwelling together are no longer material to the case. The matter of deeding the home to respondent is now submerged in the general relief sought.

Appellant's first contention is that the evidence failed to establish a contract sufficiently clear and precise in its terms to permit its enforcement.

 It is well settled in this state that oral contracts to devise and bequeath real and personal property are enforceable if they are established by evidence that is conclusive, definite, and beyond all legitimate controversy, and if there has been sufficient performance to remove the bar of the statute of frauds. See *In re Fischer's Estate*, 196 Wash. 41, 81 P. (2d) 836, and *Osterhout v. Peterson*, 198 Wash. 166, 87 P. (2d) 987, where the cases are assembled and discussed.

 It is undoubtedly true that, in order to warrant a decree of specific performance, the terms of the contract must be so clear, definite, certain, precise, and free from obscurity or self-contradiction, that neither party can reasonably misunderstand them, and that the court can discern the intention of the parties and

interpret the contract without supplanting any of its provisions or supplying anything additional. However, absolute certainty is not exacted; reasonable certainty is all that is required. 58 C. J. 930, § 96. If, from all the evidence in the case, the court can ascertain and determine the contract with reasonable certainty, that is sufficient. *Faucett v. Northern Clay Co.,* 84 Wash. 382, 146 Pac. 857; *Le Marinel v. Bach,* 114 Wash. 651, 196 Pac. 22; *Herren v. Herren,* 118 Wash. 56, 203 Pac. 34.

In the following cases, decided by this court upon similar states of fact, specific performance was decreed: *Worden v. Worden,* 96 Wash. 592, 165 Pac. 501; *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465; *Herren v. Herren,* 118 Wash. 56, 203 Pac. 34; *Swingley v. Daniels,* 123 Wash. 409, 212 Pac. 729; *Olsen v. Hoag,* 128 Wash. 8, 221 Pac. 984; *Avenetti v. Brown,* 158 Wash. 517, 291 Pac. 469; *Resor v. Schaefer,* 193 Wash. 91, 74 P. (2d) 917; *In re Fischer's Estate,* 196 Wash. 41, 81 P. (2d) 836.

In none of those cases did the terms of the particular contract possess a greater certainty than that shown by the contract here under consideration; in several, the terms were much less certain. Upon the first assignment of error we are convinced, and hold, that the contract was established by that degree and amount of evidence necessary to warrant its specific enforcement.

Appellant's second contention is that the performance relied upon by respondent is as readily and logically referable to the marriage contract as it is to the contract for care and nursing, and, hence, will not support an action for specific performance.

The argument of appellant begins with a statement of the general rule that, when *part performance* is

relied upon for specific *enforcement* of a contract, every act of *such performance*

" . . . must be unequivocally and, ordinarily, exclusively referable to the contract, in the sense that it must of itself give rise to an inference of the existence of the contract, and that the doing of it cannot otherwise reasonably be accounted for, and that it must clearly appear to have been done in pursuance of the contract, so as to result from the contract and not from some other relation; . . ." 58 C. J. 994, § 190.

In attempting to apply the general rule just stated, appellant proceeds upon the theory and premise that what respondent was required to do under the contract was merely to care for and nurse the decedent during his lifetime. Of course, the personal care that respondent was to render was the thing in which decedent was primarily interested, and that was the service from which he was ultimately and specifically to benefit. But that was not all that was exacted of respondent under the terms of the agreement which she made with the decedent. For years, she had been engaged in a profitable business of her own, in which she expected to continue indefinitely. The very basis of the contract between the parties, and one of its vital terms, was that she should dispose of her business and discontinue her profession as long as decedent lived. That was the first requirement of the proposition which decedent initially made. Had respondent not agreed to that concession, there undoubtedly would have been no contract.

When respondent disposed of her business, dismissed her patients, and refunded their money, as she was required to do, she performed a substantial part of her agreement. There is no occasion here to invoke that portion of the rule above stated which requires that the act performed "must of itself give rise to an *inference* of the existence of the contract," because here the

"*existence of the contract*" was fully established by the evidence, and, unquestionably, the act of disposing of her business was done exclusively in pursuance of the contract, and of it alone, for at that time nothing had been agreed, or even suggested, concerning a possible marriage between the parties.

The rule is definitely settled in this state that oral contracts, of the character here in question, are enforceable notwithstanding the statute of frauds, if there has been either full or part performance. *Andrews v. Andrews,* 116 Wash. 513, 199 Pac. 981; *In re Fischer's Estate,* 196 Wash. 41, 81 P. (2d) 836.

As already suggested, appellant's present contention relates entirely to the acts performed by respondent *after* marriage. The same contention is made and more emphatically urged upon appellant's third and final assignment of error. We will, therefore, proceed with our discussion of that question under the next assignment.

■ Appellant finally contends that,

". . . irrespective of the indefiniteness of the contract or the fact that the performance alleged is a performance anticipated by a marriage contract alone, this action must fail for an entirely different reason, and that is that the marriage of the parties to the alleged agreement effectually and finally abrogated that agreement."

As a basis for this contention appellant advances three propositions: (1) That, since the marriage relation obligated the wife to care for her husband and make a home for him, an agreement to pay for such services is without consideration; (2) that an agreement by a husband to pay his wife for services ordinarily incident to the marriage relation is contrary to public policy, and therefore void; and (3) that the marriage contract is inconsistent in terms with a prior

contract for care and household services, and supersedes such contract.

All of these propositions may be readily conceded as correct statements of the law upon the factual situations implied therein. They, however, relate either to a situation where husband and wife attempt to contract with each other for the rendition of such services as, under the law, are a part of their reciprocal duties and obligations by virtue of the marriage relation, or else to a situation where parties who are not husband and wife, but who afterwards intermarry, contract *inter se* for the performance of such services as would, between married persons, be included within the marital obligations. In such instances, the contract is unenforceable, because, in the eyes of the law, such services performed after marriage are solely in consideration of the marital relation and are referable exclusively thereto, and, further, because it would be against public policy to permit the enforcement of such contracts. Consequently, any contract made before marriage with reference to such services is abrogated when the parties enter into the marital relation with each other, and any such contract made after marriage is without consideration.

Appellant principally and most earnestly contends that the contract was simply one wherein the decedent merely agreed to compensate respondent for services which, after their marriage, she was required to perform without compensation, and that therefore the marriage abrogated or superseded the prior contract, so that now it is unenforceable. If the premise were correct, the conclusion might follow, but we do not take that restricted view of the contract.

We have already pointed out that one of the specific terms of the contract was that respondent should dis-

pose of the business in which she had been engaged for many years, and that she performed that part of the agreement to the letter. It may be true, as appellant argues, that it was necessary for her to do that in order to perform the subsequent services; and it may also be true that, so far as the decedent was then concerned, he was primarily interested in the care and nursing which he expected to receive from respondent after she had disposed of her business. But the case is to be viewed, not merely from the standpoint of the benefit to be derived solely by the decedent, but rather from the standpoint of what each of the parties was required to do by the express terms of the contract. When considered from that point of view, it seems clear that the subject matter of the contract encompassed much more than mere services incident to the marriage relation.

The matter really reduces itself to the question whether there was sufficient consideration to support the contract. It is not contended that respondent did not do everything that she originally agreed to do, but rather that what she actually did was solely because of the marital relation, and not in performance of her contract. From this, it is argued that the services performed by respondent, after marriage, cannot be regarded as sufficient consideration for the contract.

The rule applicable to the situation is well stated in 1 Williston on Contracts (Rev. ed.), 469, § 134, as follows:

"It is no objection to the sufficiency of consideration that much of what was requested and given as such would be insufficient to support a contract. If a legal detriment to the promisee or benefit to the promisor is given, the consideration is valid though much also was requested and given which was neither detrimental to the one, nor beneficial to the other. It should be observed, however, that though a portion of the

consideration requested would be in itself of no validity as consideration to support a promise, that portion must nevertheless be given in order to create a contract; otherwise mutual assent would be lacking."

In 12 Am. Jur. 612, § 118, the same rule is stated in somewhat different language, as follows:

"If one of two considerations for a contract is insufficient, but not illegal, the other, if sufficient, will support the contract. Similarly, although part of the consideration is insufficient consideration, a contract may be supported by the residue of the consideration if good per se."

See, also, Restatement of the Law of Contracts, § 84 (b).

The text writer above quoted defines detriment and benefit as follows:

"Detriment, therefore, as used in testing the sufficiency of consideration means legal detriment as distingushed from detriment in fact. It means giving up something which immediately prior thereto the promisee was privileged to keep or doing or refraining from something which then he was privileged not to do or refrain from doing. And benefit correspondingly must mean the receiving as the exchange for his promise of some performance or forbearance which the promisor was not previously entitled to receive. That the promisor desired it for his own advantage and had no previous right to it is enough to show that it was beneficial." 1 Williston on Contracts (Rev. ed.), 327, § 102A.

A succinct definition of sufficient consideration is also given by the same author as follows:

"Mutual promises in each of which the promisor undertakes some act or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee, and neither of which is void are sufficient consideration for one another." 1 Williston on Contracts (Rev. ed.), 347, § 103F.

Respondent's acts come clearly within these rules and definitions. She not only sustained a legal detri-

ment in disposing of her business, as she was expressly required to do, but she also performed the various services which she was required to perform, although, because of the intervention of marriage, such performance may not now, of itself, legally constitute sufficient consideration.

We think that another rule applicable to the facts of this case is that found in Restatement of the Law of Contracts, 110, § 90, as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

It seems to us that it would be a gross injustice to deny respondent the benefit of her bargain, which she performed to the letter, merely because by operation of law the services which she rendered subsequent to marriage are held to be without consideration.

Although this opinion has already gone to an excessive length, it is but fair that we should advert to some of the authorities cited by appellant. There are four cases upon which it principally relies: *In re Callister's Estate*, 153 N. Y. 294, 47 N. E. 268, 60 Am. St. 620; *Ryan v. Dockery*, 134 Wis. 431, 114 N. W. 820, 126 Am. St. 1025, 15 L. R. A. (N. S.) 491; *Bohanan v. Maxwell*, 190 Iowa 1308, 181 N. W. 683, 14 A. L. R. 1004; *In re Sonnicksen's Estate*, 23 Cal. App. (2d) 475, 73 P. (2d) 643.

In the *Callister* case, *supra*, a widow filed a claim against her deceased husband's estate for moneys alleged to be due her. The parties were married in 1857 and lived together until the husband's death in 1888. About a year preceding the marriage, the decedent, who was a practicing lawyer, employed the claimant,

his subsequent wife, as a clerk in his office and agreed to pay her the sum of five hundred dollars per year as long as he practiced law, but payment was not to be made until he retired from practice. The services, which began before marriage, continued thereafter until the death of the husband. Only five dollars was ever paid on the account. The entire claim amounted to over twenty-two thousand dollars. The court held that the claimant could not recover for services rendered after marriage, because from that time forward the husband became entitled to the services of the wife without paying for them. The distinction between that case and this is that there the contract was simply for personal services, while here the contract involved, in addition, the disposition of a valuable business by respondent.

In the *Ryan* case, *supra,* a contract, made on the day of marriage, provided that the husband would care for, support, and nurse his wife, and that she should leave him all her property upon her death, should he survive her. Upon the death of the wife, the husband filed a claim in *quantum meruit* in the sum of $1,750. The court held that the plaintiff had merely performed services required of him by law as a husband, and that his performance of such services was not a consideration for the original promise of the wife. The distinction between that case and this is the same as that presented by the *Callister* case, *supra.*

In *Bohanan v. Maxwell, supra,* the contract was virtually the same as that in the *Ryan* case. Suit was brought by the wife for specific performance on the theory that she had *fully* performed the contract by the rendition of the services. It was held that she could not recover as for full performance, because the services constituting such performance were not compensable after marriage and therefore afforded no

consideration for the contract. The distinction between that case and this is the same as that in the two preceding cases.

The *Sonnicksen* case, *supra*, is, in many respects, quite similar to the case at bar and, it must be conceded, is authority for appellant's position. The contract in that case was in writing, but is too long to quote in full. In substance, so far as material here, it provided that the petitioner, who was a trained nurse, should discontinue her profession and reside. with the decedent in order that he might have human companionship and the care and nursing that might be required by him by reason of his age and prospect of infirmity; in consideration of which, decedent agreed to convey to the petitioner, at the moment immediately before his death, certain real and personal property. About a year and a half after the execution of the agreement, the parties married and thereafter lived together until the husband's death three years later. The wife filed a petition as executrix seeking an order directing the conveyance to her of the real property. The district court of appeals of California held that, when the parties became husband and wife, one of the implied terms of the contract of marriage was that the wife would perform without compensation the services covered by the written agreement; that the terms of the two contracts were inconsistent; and that the necessary legal effect of the marriage contract was to terminate the obligation of the parties under the written agreement.

The only distinction that we can discern between that case and this is that there the petitioner merely refrained from practicing her profession as a nurse, while in this case respondent not only refrained from practicing her profession, but also sold and disposed of an established valuable business. We think that the

distinction between the two cases is substantial, because it can logically be said that, in the *Sonnicksen* case, the petitioner merely quit one kind of activity in order to perform another, or, in other words, that giving up her erstwhile employment was but an incident to a proper discharge of her duties under the contract. In the case at bar, however, respondent was required to, and did, dispose of an established business, thereby incurring a substantial detriment; in short, she changed the whole current of her life. However, if the distinction between that case and this is not sufficiently substantial to call for different results, then we must respectfully decline to follow the authority of the California case, as applied to the facts of the case at bar.

In view of the facts and the reasons which we have heretofore stated, we are of the opinion that there was substantial part performance by respondent; that such performance was sufficient consideration to support the contract; that all things required to be done by respondent have, in fact, been performed; and that both parties recognized and affirmed the binding effect of the contract after marriage. The contract should, therefore, be specifically enforced.

The decree is affirmed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.