**UNITED STATES of America, Plaintiff,**

**v.**

**Harold J. MOBERG, Defendant.**

**No. CS-00-120-CI.**

United States District Court, E.D. Washington.

April 30, 2002.

Rolf H. Tangvald, U.S. Atty's Office, Spokane, WA, for Plaintiff.

Dennis Patrick Hession, Richter Wimberly, Spokane, WA, Harold J. Moberg, Moberg Law Firm, Moses Lake, WA, for Harold J. Moberg.

Stephen John Hallstrom, Grant County Prosecuting Attorney, Ephrata, WA, for Grant Co. Treasurer.

ORDER GRANTING DEFENDANT'S MOTION TO VACATE LEVY AND QUASH WRIT OF EXECUTION

IMBROGNO, United States Magistrate Judge.

BEFORE THE COURT is Defendant's Motion to Vacate Levy, continued for hearing without oral argument to April 17, 2002. (Ct.Rec.53.) Assistant United States Attorney Rolf H. Tangvald represents Plaintiff; attorney Dennis P. Hession, Richter–Wimberley, P.S., represents Defendant. The parties have consented to resolve the matter before a magistrate judge. (Ct.Rec.23.)

Following entry of summary judgment in favor of Plaintiff, an Amended Judgment was entered against Defendant on December 19, 2000, for the sum of $33,481.19,[1] plus interest at 7% until date of judgment, $150 filing fee and post-judgment interest at the legal rate until paid in full, for failure to pay numerous guaranteed student loans. (Ct.Rec.30.) The loans, executed on August 12, 1980, August 13, 1981, August 26, 1982, and November 4, 1983, were guaranteed by the Washington Student Loan Guaranty Association and reinsured by the Department of Education. (Ct.Rec.70, att.A.) Following default, the loans were reassigned to the Department of Education, and this litigation ensued.

On June 4, 2001, the court signed a Writ of Execution to sell certain real property owned by Defendant located at 1560 Mary Street, Moses Lake, Washington (referenced to as the Mary Street property). The U.S. Marshal had scheduled a sale of that property on September 21, 2001; the day before, counsel for Defendant filed the instant Motion. The sale was cancelled by the United States to permit the parties time to complete discovery and file briefs in response to Defendant's Motion to Quash the Writ of Execution and Vacate Levy.

During discovery, a factual issue arose whether the Mary Street property was exempt from execution based on Defendant's assertion Plaintiff could not demonstrate by clear and convincing evidence it was Defendant's separate property. Previously, Defendant had been asked by interrogatory whether he had signed a community property agreement; he answered "no." Additionally, he signed a declaration under penalty of perjury stating "I have not received any separate inheritance or property of any kind or nature and do not have any separate property in my possession." (Ct.Rec. 60, Ex. B and D.) Contrary to those statements, discovery disclosed a quit claim deed dated June 25, 1990, conveying the Mary Street property from Helen Moberg, Defendant's mother, to Harold J. Moberg. (Ct.Rec.70, Ex. D, Ex. T.) Additionally, discovery disclosed

1. The court notes an $8,600.69 IRS tax refund was offset against the debt in 1996. (Ct.Rec.25.)

the existence of a community property agreement signed by Harold and Janis Moberg on March 25, 1986, which provides for the conversion of all property of both individuals to community property in the event of the death or incompetency of either party. (Ct.Rec.70, Ex. F.) Plaintiff contends the community property agreement does not affect the present separate status of the Mary Street property.

Additional facts revealed Defendant attended Gonzaga University Law School from 1980 to 1983, the same years his student loans were executed. (Ct.Rec. 70, Ex. C, Harold Moberg Decl.) Defendant married Janis Whitener in 1984. (Ct.Rec. 70, Ex. C, Harold Moberg Decl.) The couple has purchased, managed, and sold rental properties since 1984. (Ct.Rec. 70, Ex. H, Janis Moberg Dep. at 8.) The only piece of rental property acquired and held in Harold Moberg's name only is the Mary Street property. (Ct.Rec. 70, Ex. I, Harold Moberg Dep. at 23; Ex. J.) While the couple would discuss issues related to the ownership and management of the rental properties, only Defendant performed the daily rental management duties. (Ct.Rec. 70, Ex. H, Janis Moberg Dep. at 36, 37.) A separate bank account in Defendant's name was maintained for deposits and expenditures of income and expenses attributable to all of the rental units. Janis Moberg was neither listed on the account, nor did she have signature rights (Ct.Rec. 70, Ex. H, Janis Moberg Dep. at 37, 38). Notwithstanding, because the account involved money from all the rental units, community and separate, it was, in effect, a commingled account. Janis Moberg's knowledge about and management participation in the Mary Street property was limited: her deposition testimony indicated the property was acquired in 1986 (rather than 1990); she stated $10,000 of community funds was used to cure the mortgage when in fact the amount was $1,426; and during the six months it took to repair the Mary Street property, she stated she spent only 12 hours working on or dealing with those repairs. (Ct.Rec. 70, Ex. H, Janis Moberg Dep. at 45, 49, 52.)

With respect to the mortgage on the Mary Street property, NationsBank, the mortgagor, advised Plaintiff financing was arranged in 1977 under the names of John and Helen Moberg. The bank had no record of an assumption of the mortgage by Harold Moberg or Harold and Janis Moberg, but the loan was paid in full in June 1997. (Ct.Rec. 70, Ex. K, Faygas Decl.)

It is undisputed the property, at the time it was quitclaimed to Defendant, was not in habitable condition and had been abandoned. Defendant's brother Michael Moberg stated he had started to make repairs and was offered the property by his parents, but he refused because the mortgage and Utility Local Improvement District (ULID) debt exceeded the value of the property. (Ct.Rec. 55, Michael Moberg Decl.) The assessed value of the Mary Street property in 1988 was $24,270. In 1990, the mortgage payments were in arrears in the amount of $1,462.70 and foreclosure proceedings had begun. The balance due on the mortgage was $14,520.04. (Ct.Rec.709, Ex. R.) The property also was encumbered with a ULID assessment of $6,704.60. (Ct.Rec. 70, Ex. K., Faygas Decl.; Ex. L.) The property was scheduled for Sheriff's sale on June 27, 1990. (Ct.Rec.70, Ex. R.) Foreclosure proceedings were halted when Defendant paid the cure amount of $1,462.70. On June 25, 1990, Helen Moberg quitclaimed the property to Defendant. Based on the 1988 assessed value, less the amounts owed for the mortgage and ULID, the court finds the net value of the transfer to Defendant in 1990 was about $3,000.

The ULID was compromised to $3,810.87 and paid by Defendant on December 20, 2000. Expenses from 1990 to 2000 paid by Defendant for the mortgage, the cure of the foreclosure proceedings, the compromised ULID assessment, remodeling costs, accrued interest and delinquent taxes totaled $52,277.15.[2] (Ct. Rec.70, Ex. U.) In 2001, the assessed value of the property had increased to $46,165. (Ct.Rec.70, Ex. M.) From 1990 through 1999, rental income on the Mary Street property totaled $31,425; depreciation was claimed in the amount of $6,270 leading to a total tax deductible loss during those years on the couple's joint tax return of $14,406. (Ct.Rec. 70, Ex. N., 1990–1999 Moberg Tax Returns, Schedule E.) Other evidence discloses Janis Moberg is a District Court Judge for Grant County; Defendant is an attorney and owner of the Moberg Law Firm. The Mobergs also own at least five additional rental properties, as well as the Grant County Title Insurance Company. They have estimated their earnings in 2001 to be over $200,000. (Ct. Rec. 70, Ex. H., Janis Moberg Dep. at 24, 27.)

## MOTION TO VACATE LEVY AND QUASH WRIT OF EXECUTION

Defendant contends the Mary Street property is presumed to be community property; the consideration for the transfer was the community's assumption of the liabilities on the property, which exceeded the property's value in 1990. Defendant asserts since 1990, the marital community has spent in excess of $45,000 of community funds in repairing the property, servicing its debts, satisfying the ULID assessment, and restoring the property to a liveable and rentable condition. Thus, Defendant concludes, even were this court to find the property to be separate, the community's lien exceeds the fair market value of the property. Defendant also relies on RCW 26.16.200, which holds the separate debt of one spouse cannot be satisfied from that spouse's "earnings and accumulations," unless the debt has been reduced to judgment within three years after marriage. Defendant also argues the Mary Street property was not a gift, but was a transfer in exchange for valuable consideration given by the community, including an assumption of the debt represented by the note and deed of trust, payment of delinquencies and acceptance of the responsibility to restore the property to a habitable condition. Additionally, Defendant asserts, at the time of the transfer, Helen Moberg became dependent on his support for her living expenses and accommodations.

Plaintiff responds the transfer was a gift, admits the community paid $5,278.57 in expenses ($1,462.70 to cure a foreclosure and $3,810.87 to settle the ULID), entitling it to a marital lien for the payment of these expenses. However, Plaintiff argues the lien should be reduced by any equitable benefit received by the marital community, including tax benefits of $17,707, and rental income of $37,425, funds which were available to pay the mortgage and other expenses associated with the property. Alternatively, Plaintiff contends the marital contribution should be set off against the benefit received from the appreciation of the property based on the percentage of ownership interest attributable to the marital community at the time of transfer

2. This figure is based on Plaintiff's summary of acquisition costs ($58,981.75), less the full amount of the ULID ($6,704.60). It is undisputed the ULID assessment was compromised to $3,816, a figure which is reflected in the court's total of $52,277.15. (Ct.Rec.70, Ex. J.)

(21%) of the appreciated assessed value ($21,895), or $4,751.

## ANALYSIS

Writs of execution necessary to enforce a judgment shall be in accordance with "the practice and procedures of the state in which the district court is held, existing at the time the remedy is sought, except to the extent any statute of the United States governs is applicable." Fed.R.Civ.P. 69(a). The Federal Debt Collection Procedures Act provides co-owned property is subject to execution to the extent provided under applicable state law. 28 U.S.C. § 3203(a). There is no dispute the debt sought to be satisfied is the separate debt of Defendant; there is also no dispute under state law the only property which can be the subject of a writ of execution is Defendant's separate property, since the debt was not reduced to judgment until far beyond the first three years of marriage. RCW 26.16.200.

RCW 26.10.010 defines the separate property of the husband as property and pecuniary rights acquired by him either before marriage or after marriage "by gift, bequest, devise or descent, with the rents, issues and profits thereof." As to property acquired after marriage, such property is presumed to be community property, unless proven otherwise by clear and convincing evidence. *In Re Marriage of Harrington,* 85 Wash.App. 613, 625, 935 P.2d 1357 (1997). Here, the property at issue was "acquired" after marriage and, thus, is presumed to be community property, unless there is clear and convincing evidence to the contrary.

The classification of property as separate or community presents a mixed question of law and fact. The time of acquisition, the method of acquisition, and the intent of the donor are factual questions; whether the facts found support the classification of property as separate or community is for the court to determine as a matter of law. *In re Marriage of Martin,* 32 Wash.App. 92, 94, 645 P.2d 1148 (1982). The community property agreement executed by Defendant and Janis Moberg is of no assistance as it does not take effect until the death or incompetency of either spouse. Thus, the only conveyance relevant here which would permit a characterization of the property as separate by operation of RCW 26.16.010 would be the gift provision.

State case law states the elements of a gift are (1) a donative intent; (2) a subject matter capable of passing by delivery; and (3) an actual delivery. *Martin,* at 96, 645 P.2d 1148, citing *Oman v. Yates,* 70 Wash.2d 181, 422 P.2d 489 (1967). The only issue as to these three elements involves the first—donative intent. In construing whether a deed effects a gift of real property, courts "must give meaning to every word if reasonably possible, and carry out the real intention of the parties. That intention is to be gathered from the deed, if possible, but when necessary by resort to the circumstances surrounding the entire transaction." *Matter of Estate of Little,* 106 Wash.2d 269, 287, 721 P.2d 950 (1986). In *Andrews v. Andrews,* 116 Wash. 513, 519–522, 199 P. 981 (1921), the court examined a factual scenario similar to the one here where a dependent parent transferred property in exchange for valuable consideration, that being his maintenance and support for the remainder of his life. The court held this was a contractual event, not a gift, which by definition involves a transfer with no consideration. *Andrews* noted the "gift, bequest, devise or descent" of RCW 26.16.010 does not contemplate contractual obligations. Thus, based on *Andrews,* the court concludes the transfer was a contractual event and not a gift.

Even assuming the property was a gift to bring it within the operation of RCW 26.16.010, community property law requires evidence of a clear intent by the donor to make the gift to the married donee as separate property. *In re Marriage of Olivares,* 69 Wash.App. 324, 331, 848 P.2d 1281, *rev. denied,* 122 Wash.2d 1009, 863 P.2d 72 (1993). In *Olivares,* the court held it was necessary to demonstrate a contemporaneous clearly stated intent to make the gift one of separate property. *Olivares,* at 334, 848 P.2d 1281. Here, the only direct contemporaneous evidence of Helen Moberg's stated intent is the deed. As noted in case law, the presence or absence of a name on a deed is not dispositive as to whether the property should be characterized as separate or community. *Merritt v. Newkirk,* 155 Wash. 517, 520–21, 285 P. 442, 444 (1930); *In re Marriage of Skarbek,* 100 Wash.App. 444, 997 P.2d 447 (2000). Rather, the court may also look beyond the language of the deed to determine whether the property was acquired with community assets and/or credit or separate assets and/or credit. *In re Marriage of Sedlock,* 69 Wash.App. 484, 506, 849 P.2d 1243, *rev. denied,* 122 Wash.2d 1014, 863 P.2d 73 (1993); *Rustad v. Rustad,* 61 Wash.2d 176, 178, 377 P.2d 414 (1963) (character of real property is determined by character of funds used to purchase it). State law also holds the character of property is established at the date of acquisition and remains unchanged until agreement of the parties or by operation of law. Skarbek, at 447.

Evidence in favor of concluding the property was to be separate other than the deed are facts supporting an inference Helen Moberg was familiar with the concept of separate property, having quit claimed her interest to her former spouse at an earlier date, and he, in turn, quit claimed the property back to her as separate property at the time of their dissolution. Additionally, it is undisputed Defendant was a practicing attorney and was presumed to have been familiar with the distinction between the conveyance of property to separate or community interests. However, other more persuasive evidence suggests the transfer was to the community.

It is undisputed Helen Moberg did not have sufficient assets to cure the default and was in danger of losing the property to foreclosure. Additionally, at the same time, she became dependent on Defendant's household for her living arrangements and expenses, which this court would find to be a contribution by the community. There is no showing by Plaintiff the obligations here, the support and maintenance of Defendant's mother and the renovation of the property, were underwritten with separate property as opposed to community. Defendant's 1990 Schedule E indicates $9,572 (before depreciation) was spent renovating the property and only $975 in rent was received that year. (Ct.Rec.70, Ex. N.) In 1991, Defendant's Schedule E return indicates $2,800 in rental income was received and expenses totaled $3,505 (before depreciation). There is no evidentiary proffer Defendant had separate assets to support the expenses involved with the Mary Street property during the first few years of ownership. Additionally, there is no evidence the time commitment involved in the renovation of the property and its management did not involve community resources. Accordingly, the court must conclude the transfer was neither a gift to Defendant, nor was it intended to be separate property.

The evidence in this case is very troubling—from Defendant's impeached responses to his interrogatories, his refusal to disclose the existence of the deed to the

Mary Street property, his assertion he and his spouse had assumed the Mary Street mortgage when the bank has no record of an assumption, and the nonpayment of the ULID until ten years after its assessment and then at a compromised amount. These facts are even more troubling in light of Defendant's obvious financial ability to repay the student loans, an estate which is the direct result of the education the student loans made possible, and his professional standing in the community and that of his spouse. The court is also mindful of Congressional intent in collecting delinquent student loans, the fact there is no statute of limitations and the loans are not dischargeable in bankruptcy. 20 U.S.C. § 1091a. However, the court is constrained by the community property laws of the state; for this reason, Defendant's Motion to vacate the levy and quash the Writ of Execution is **GRANTED.**

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.