[No. 45711.   En Banc.   October 11, 1979.]

THE CITY OF BELLEVUE, *Respondent,* v. THE STATE OF WASHINGTON, *Appellant.*

*Slade Gorton, Attorney General,* and *James R. Tuttle, Assistant,* for appellant.

*Lee Kraft, City Attorney,* and *Laurence G. Nord, Jr.,* and *Richard S. Gidley, Assistants,* for respondent.

BRACHTENBACH, J.—The question presented in this case is whether a city resolution allowing city officials and employees reimbursement for restaurant tips, paid while on city business, violates article 8, section 7 of the state constitution. Article 8, section 7 reads:

No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

The City of Bellevue, a nonchartered optional code city under RCW 35A, adopted a resolution, the relevant part of which states:

Payment for table service at a restaurant, commonly referred to as a tip, not to exceed 15% of the restaurant price of the meal, is reimbursable as a reasonable and necessary cost for such service and as a reasonable and necessary part of the cost of the meal. Such tips may be added to the restaurant price of business meals for reimbursement.

After a State Auditor's audit report questioned the constitutionality of this reimbursement practice, the City brought a declaratory judgment action. The trial court granted the City's motion for summary judgment. We affirm.

The court entered these findings of fact, among others:

### V.

It is the well established custom, tradition, practice and standard in the restaurant industry for customers receiving table service to pay for said service in the form of a tip. The receipt of such tips by waiters and waitresses is a part of their basic compensation.

### VI.

It is the well established custom, tradition, practice and standard in the restaurant industry that a tip is considered a part of the cost of a meal, and although payment of such is on a voluntary basis, failure to pay would be a gross violation of said custom, tradition, practice and standard. Presently, 15% of the price of a meal is the standard reasonable tip for such a meal.

These findings were based on the affidavit of Victor Rosellini, a long–time Seattle restaurateur and immediate past president of the National Restaurant Association, and upon the affidavit of Mario Vaccarino, the business agent for a local union of hotel, motel, restaurant employees and bartenders. There was substantial evidence to support the findings.

The court concluded as a matter of law that (1) intent to make a gift must be established before article 8, section 7 applies and that such intent was lacking, (2) waiters and waitresses provide a service constituting adequate consideration for a tip, and (3) the reimbursement policy is a recognition of the economic realities within the restaurant industry allowing city officials and employees to pay the same kind of expenses paid by other persons in the community.

■ We begin by noting that a legislative enactment, including one by a municipal corporation, is presumed constitutional. *See Spokane v. Carlson,* 73 Wn.2d 76, 80, 436

P.2d 454 (1968). The State, which here challenges the constitutionality of such a legislative enactment, carries the heavy burden of demonstrating the enactment's invalidity beyond a reasonable doubt. *Spokane v. Vaux,* 83 Wn.2d 126, 129, 516 P.2d 209 (1973); *State v. Primeau,* 70 Wn.2d 109, 111, 422 P.2d 302 (1966).

We focus upon the language of article 8, section 7 which provides that no city shall *give* any money to any individual. From these words it follows that there must be a gift of the city's money before the prohibition applies.

A gift is a voluntary transfer of property without consideration. *Andrews v. Andrews,* 116 Wash. 513, 521, 199 P. 981 (1921). There is no claim that the gift concept embodied in article 8, section 7 was meant to be interpreted in any manner different from the usual and ordinary meaning of gift. Therefore, inherent in that concept is the necessity of a donative intent. *See Oman v. Yates,* 70 Wn.2d 181, 185, 422 P.2d 489 (1967). We have so held in reference to article 8, section 7:

> [I]f intent to give a gift is lacking the elements of a gift are not present and article 8, section 7 does not apply.

*Scott Paper Co. v. Anacortes,* 90 Wn.2d 19, 33, 578 P.2d 1292 (1978). *State ex rel. Madden v. PUD 1,* 83 Wn.2d 219, 223, 517 P.2d 585 (1973).

With these principles in mind we must examine the nature of a tip. The trial court found that it is the "well established custom, tradition, practice and standard in the restaurant industry for customers receiving table service to pay for such service in the form of a tip." Further such tips are viewed by employers, employees and their labor representatives as part of the basic compensation paid to the employees.

Common knowledge tells us that tipping is indeed a well established custom and practice. It is not only done, it is expected. Judicial note of the nature of tipping has been taken. In *Roberts v. Commissioner,* 176 F.2d 221, 223–24

(9th Cir. 1949), the court observed: "Despite apparent voluntariness, there is an element of compulsion in tipping. . . . Actually a tip is connected directly with the service and its quality. . . . [T]he giving of a tip is tied to the service, without which the occasion would not have arisen."

The trial court found in an unchallenged finding of fact that the tip was payment for service rendered. The City recognized this fact in the resolution by its declaration that a tip is "a reasonable and necessary cost for such service and is a reasonable and necessary part of the cost of the meal."

This contradicts any donative intent and provides adequate consideration. The State, which had the heavy burden of proof, did not provide any evidence of donative intent. In fact, in oral argument, the State conceded that if the tip were added to the menu price as a mandatory service charge, its challenge would fail.

The State relies on *State ex rel. O'Connell v. Port of Seattle,* 65 Wn.2d 801, 804, 399 P.2d 623 (1965). There we said that the expenditure of public funds by the Port of Seattle for promotional hosting was the giving of a gift in violation of article 8, section 7 because the hosting was done "without consideration." It is the presence of consideration in recognizing that the tip is connected to the service rendered that distinguishes this case from *O'Connell.*

A number of other states have constitutional provisions comparable to our article 8, section 7, but we have been unable to locate another case directly on point. Of interest, however, is an opinion of the Attorney General of Arizona. That state has a provision substantially comparable to ours. In an opinion that ruled that reimbursement for tips did not violate article 9, section 7 of the Arizona constitution, the Attorney General quoted from *Fairfield v. Huntington,* 23 Ariz. 528, 533–34, 205 P. 814 (1922):

> ". . . As used in section 7, article 9, this word has the meaning usually attached to it, which appears in Webster's International Dictionary as a 'gift' or 'that

which is given as a present or gratuitously.' The idea it conveys is that of help voluntarily extended in obedience to a desire to do a charitable act where no duty except to aid a worthy cause demands it, there being no thought or intention on the part of the donor of discharging thereby either a legal or moral obligation due from him to the donee. It prevents the state from becoming a subscriber to a charitable object, either alone or with others; that is, from appropriating its funds to an individual, association, or corporation for a cause having no claim upon the state other than its admitted worthiness, but it does not prevent the recognition of moral obligations founded on justice and equity, even though the state is not liable therefor as a matter of law. Its effect is merely to prohibit the state from assuming the attitude of the person who says: "The cause is a good one, I will contribute to it', but it does not interfere with its taking the position of one who says of a just, though unenforceable obligation: 'I owe that, here is your money in payment of it.' . . ."

Arizona Attorney General Opinion, Sept. 17, 1969.

Under the unchallenged findings of fact recited above and the principles of law stated, the trial court was correct. The judgment is affirmed.

UTTER, C.J., and WRIGHT, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

ROSELLINI, J. (dissenting)—It may seem trifling to object to tipping at public expense, however, it violates the state constitution and the precedent it sets will cost the taxpayers millions of dollars.

For instance, there has been appropriated for the 1979–81 budget a sum of some $56.6 million for travel and per diem expense for the State. The amount provided by other subdivisions of government for the public expenses of their employees is equally impressive. If tipping is permitted in the instant case, I am sure that all government entities will follow this precedent.

A $5 lunch or a $10 dinner is commonplace. The public employee under present law gets a $5 lunch or a $10 dinner

and he is asked to pay the tip out of his funds which amounts to 10 or 15 percent of the cost of the meal. It seems to me that it is a good bargain to obtain a $10 meal for the sum of $1.50, which would be the amount the individual paid as a tip. No great sacrifice at today's prices. But if the tips of public employees are to be paid by the public entities, it will amount to millions of dollars.

Article 8, section 7, of the Washington Constitution provides:

§ 7 CREDIT NOT TO BE LOANED. No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

The general rules followed in the interpretation of this case are as follows: All constitutional adjudication begins with the understanding that the constitution is an expression of the will of the people. *State ex rel. Albright v. Spokane,* 64 Wn.2d 767, 394 P.2d 231 (1964). Thus, the court is limited in its role in interpreting the constitution. First, the court has no power to construe or interpret a provision that is clear, plain and unambiguous in its terms. *Anderson v. Chapman,* 86 Wn.2d 189, 543 P.2d 229 (1975). *See State ex rel. O'Connell v. Port of Seattle,* 65 Wn.2d 801, 399 P.2d 623 (1965). Second, the court cannot create exceptions where there are none, no matter how expedient or desirable, as the wisdom or folly of constitutional provisions is not the subject of judicial review. *Anderson,* at 196; *O'Connell,* at 806. However, where the meaning or scope of a constitutional provision is ambiguous and unclear, the court has a duty to construe that provision, *State ex rel. O'Connell v. Slavin,* 75 Wn.2d 554, 452 P.2d 943 (1969), since no other agency of government has authority to definitively interpret the constitution. *State Highway Comm'n v. Pacific N.W. Bell Tel. Co.,* 59 Wn.2d 216, 367

P.2d 605 (1961). The increased level of judicial scrutiny has been for the protection of public funds which may be potentially wasted. The court has acted as a watchdog to ensure that public funds will not be given away. Words used in a constitution must be understood in their usual and ordinary sense. *Gruen v. Tax Comm'n,* 35 Wn.2d 1, 211 P.2d 651 (1949).

The court will not deem a transaction valid merely because it serves a laudable purpose.

Ever since statehood the executive and legislative departments of government have construed tipping as prohibited by Const. art. 8, § 7, and have interpreted the words "[n]o county, city, town or other municipal corporation shall . . . give any money . . . to . . . any individual" in their usual and ordinary sense.

The failure to tip will not subject one to any legal detriment. Actually, the act of tipping is a gratuity for goods or service. Black's Law Dictionary 830 (1968) defines gratuity as follows:

> GRATUITY. Something acquired without bargain or inducement. State ex rel. Stafford v. Fox–Great Falls Theatre Corporation, 114 Mont. 52, 132 P.2d 689, 697. Something given freely or without recompense; a gift; something voluntarily given in return for a favor or especially a service, hence, a bounty; a tip; a bribe. McCook v. Long, 193 Ga. 299, 18 S.E.2d 488, 490.

The majority hangs its hat on the theory that in a tipping situation there is no gift because there is no "intent" to make a gift. This theory is based on a misunderstanding of the element of intent in the law of gifts. True, the courts hold that if there is no intent to make a gift, there is no valid and effective gift. *See* the cases cited in 38 Am. Jur. 2d *Gifts* § 17 (1968). As the discussion there makes clear, if there is no intent to make a gift, the alleged donor does not part with his right to the property.

I know of no case in which a gratuitous transfer was upheld by a court in spite of its finding that there was no intent to make a gift.

The cases cited do not so hold. The statement that an intent to make a gift is required was superfluous in *Oman v. Yates,* 70 Wn.2d 181, 422 P.2d 489 (1967), the court having found that there was legal consideration for the alleged gift.

*State ex rel. Madden v. PUD 1,* 83 Wn.2d 219, 517 P.2d 585 (1973), was not concerned with the law of gifts, but with the law of waiver. I have found no quarrel with its holding that without the intent to waive, there is no waiver. The same principle applied in the law of gifts declares that without the intent to make a gift, there is no gift—that is, no transfer of ownership. If the majority wishes to apply the principle here, it must conclude that all tips are void and the tippers are entitled to recoup their money.

I agree with the majority that nice customers are expected to tip the waiter or waitress. But they are under no legal obligation to do so. There is no consideration which imposes on them a legal obligation to pay extra for these services. Consequently, where public funds are used for these purposes, they constitute gratuities—precisely what their name describes.

If the people of this state wish to finance these gratuities with public funds, they should amend their constitution to so provide. It is not the proper role of the court to do so.

STAFFORD, J., concurs with ROSELLINI, J.