[No. 11493-3-II.   Division Two.   August 21, 1990.]

WASHINGTON HOSPITAL LIABILITY INSURANCE FUND,
*Respondent,* v. PUBLIC HOSPITAL DISTRICT
No. 1 OF CLALLAM COUNTY,
ET AL, *Appellants.*

*Craig L. Miller* and *Knebes Miller & Richardson, P.S.,* for appellants Public Hospital District No. 1, et al.

*Martha J. Dawson* and *Preston Thorgrimson Shidler Gates & Ellis,* for appellants Clark.

*William R. Hickman* and *Reed McClure Moceri Thonn & Moriarty,* for respondent.

PETRICH, J.—Public Hospital District No. 1 of Clallam County (Hospital District) sued its treasurer, Robert Clark, to recover losses from an unsuccessful investment of approximately $1 million of Hospital District funds. The Hospital District and Clark then sought coverage of the claim under the Hospital District's insurance policy issued by Washington Hospital Liability Insurance Fund (Liability Insurance Fund). Liability Insurance Fund brought a declaratory action to determine its duty under the policy. On cross motions for summary judgment, the Superior Court found that the policy did not cover the claim in question. We reverse.

The Hospital District is a municipal corporation formed under the laws of RCW 70.44. Liability Insurance Fund is a mutual corporation consisting of several hospitals that have organized for the purpose of self–insuring against liability claims. Liability Insurance Fund issued directors' and officers' insurance to the Hospital District. Special Endorsement 2, the relevant portion of the policy, provides as follows:

I. <u>INSURING CLAUSE</u>:
(a) As to the Directors and Officers of the Hospital that if during the policy period any claim or claims are made against the Directors and Officers individually or collectively, for a Wrongful Act, the Fund will pay, in accordance with the terms of this endorsement, on behalf of the Directors and Officers or any of them, their Executors, Administrators or Assigns all loss which the said Directors and Officers, or any of them shall become legally obligated to pay.

(b) As to the Hospital that if during the policy period any claim or claims are made against the Directors and Officers, individually or collectively, for a Wrongful Act, the Fund will pay, in accordance with the terms of this policy, on behalf of the Hospital all loss for which the Hospital is required or permitted by law to indemnify such Directors and Officers.

. . . .

II. DEFINITIONS:

. . . .

(c) The term "Loss" shall mean any amount which the Directors or Officers are legally obligated to pay for which the Hospital is required or permitted by law to pay as indemnity to the Directors or Officers for a claim or claims made against the Directors or Officers for Wrongful Acts and shall include but not be limited to damages, judgments, settlements and costs, costs of investigation and defense of legal actions (excluding from such costs of investigation and defense, salaries of Officers or Employees of the Hospital) claims or proceedings and appeals therefrom, cost of attachment or similar bonds provided always, however, such subject of loss shall not include fines or penalties imposed by law or matters which are uninsurable under the law pursuant to which this policy shall be construed.

Under the policy, Liability Insurance Fund must pay "all loss" an officer or director becomes legally obligated to pay, so long as the loss is one for which the Hospital District is required or permitted by law to indemnify its officer or director. The critical question is whether the Hospital District is permitted by law to indemnify its treasurer for a loss incurred as a result of a direct claim by the Hospital District itself.

The Hospital District, as a municipal corporation, is limited to those powers expressly granted and to powers "necessarily or fairly implied in or incident to the powers expressly granted, and also those essential to the declared objects and purposes of the corporation." *Washington Pub. Util. Dists.' Utils. Sys. v. PUD 1,* 112 Wn.2d 1, 6, 771 P.2d 701 (1989) (quoting *Port of Seattle v. State Utils. & Transp. Comm'n,* 92 Wn.2d 789, 794–95, 597 P.2d 383 (1979)). Hospital districts are statutorily authorized to sue and be sued in any court of competent jurisdiction, RCW 70.44.060(8); individually or jointly to self–insure, RCW

48.62.010; and to purchase insurance to protect and hold harmless their officers from claims arising out of the performance of their duties and to hold harmless these individuals from any expenses connected with such claims against them, RCW 36.16.138. Hospital districts do not have statutory authority to indemnify their officers. However, the parties agree, as we think they must, that public hospital districts have the common law authority to indemnify their officers for loss incurred in the good faith discharge of their duties. *See* 3 E. McQuillin, *Municipal Corporations* § 12.137 (3d ed. 1982).

Liability Insurance Fund contends that if the Hospital District reimbursed its officer for the very loss it sued him to recover, such action would not be in the nature of an indemnity. It argues, rather, that indemnity requires the loss to the indemnitee to have resulted from a third party action. However, the Washington Supreme Court's decision in *Washington Pub. Util. Dists.' Utils. Sys.,* leads us to the conclusion that indemnity can occur in a direct (2–party) action.

*Washington Pub. Util. Dists.' Utils. Sys.* arose from facts similar to those involved here. Public Utility District 1 of Clallam County sued its treasurer to recover losses from the treasurer's investment of its funds and requested its insurer to cover the claims. The insurer sought a declaratory judgment concerning its duty to provide coverage. The first issue, as framed by the court, was as follows:

> whether a public utility district (PUD) has the constitutional and statutory authority to enter into a self–insurance agreement with other state PUD's to provide coverage for *indemnification* against judgment and defense costs of the PUD's own treasurer upon a direct claim by the PUD against that treasurer.

(Italics ours.) *Washington Pub. Util. Dists.' Utils. Sys.,* 112 Wn.2d at 3.

In resolving the issue, the court observed that PUD's have statutory authority to indemnify their officers against "any action, claim or proceeding" under RCW 54.16.097. The court also observed that the statute does not indicate

whether the Legislature intended to allow insurance and indemnification of only third party claims. *Washington Pub. Util. Dists.' Utils. Sys.*, 112 Wn.2d at 9. The court held ultimately that the purpose of the statute, to protect against loss associated with public officials' good faith efforts, was best advanced by permitting a PUD to self-insure for indemnification of its officers against direct claims by the district itself. *Washington Pub. Util. Dists.' Utils. Sys.*, 112 Wn.2d at 10.

In reaching its decision, the court did not refer to any principles of indemnification that limit indemnification to loss caused by a third party claim. Although we recognize that indemnity traditionally involves a third party claim against the indemnitee, *Washington Pub. Util. Dists.' Utils. Sys.* indicated that indemnification is not necessarily so limited.

> While claims against directors and officers traditionally took the form of third party lawsuits or shareholders' derivative actions, courts are recognizing that coverage for direct actions is not antithetical to the objects and purposes of these policies. If insurers do not want to provide coverage for such claims an exclusion can be easily written into the contract.

*Washington Pub. Util. Dists.' Utils. Sys.*, 112 Wn.2d at 13.

Reading *Washington Pub. Util. Dists.' Utils. Sys.* as we do to permit indemnification in a direct action, and given the Hospital District's common law authority to indemnify its officers, we conclude that the Hospital District is permitted by law to indemnify its treasurer for a loss caused by its own claim. The insurance policy in question does not exclude coverage of a claim of this sort. Therefore, we reverse the decision of the Superior Court and hold that the insurance policy in question provides coverage of the Hospital District's claim against its treasurer.[1]

Reversed.

ALEXANDER, C.J., concurs.

---

[1] *Washington Pub. Util. Dists.' Utils. Sys.* also disposes of Liability Insurance Fund's argument that indemnification of the treasurer against the Hospital District's claim would be an unconstitutional gift of public funds. "An expenditure of

WORSWICK, J. (dissenting)—I cannot believe that any appellate court would decide this case as the majority has if insurance did not lurk in the background. Notwithstanding its statement of the issue, the majority treats this as an insurance case. It is not, for the policy here extends coverage only to those whom the hospital district has the legal authority to indemnify. The lure of an insurance company treasury should not becloud the real issue: whether a public entity, accountable for its stewardship of public money, has authority to forgive its own claim against a negligent employee and thereby suffer a loss. I would hold that the hospital district has no such authority.

The majority relies heavily on *Washington Pub. Util. Dists.' Utils. Sys. v. PUD 1,* 112 Wn.2d 1, 771 P.2d 701 (1989). That case was decided under a different statute, however, and is distinguishable. Public utility districts have statutory authority to indemnify their officers and directors (RCW 54.16.097); hospital districts do not. *See* RCW 70.44.060. Had the Legislature intended the districts to have this power, it would have said so. It is not the place of this court to fill in legislative gaps by reading into statutes what is not there. *Jenkins v. Bellingham Mun. Court,* 95 Wn.2d 574, 579, 627 P.2d 1316 (1981); *Christie v. Maxwell,* 40 Wn. App. 40, 48, 696 P.2d 1256, *review denied,* 104 Wn.2d 1002 (1985).

Even if hospital districts have a common law right to indemnify officers and directors, it does not follow that the insurance policy in this case, purchased pursuant to RCW 36.16.138, benefits the hospital district's treasurer in a suit against him by the district. This insurance is similar to directors' and officers' liability insurance purchased by

public funds is unconstitutional if it is without consideration and with donative intent." *Washington Pub. Util. Dists.' Utils. Sys.,* 112 Wn.2d at 9; *Bellevue v. State,* 92 Wn.2d 717, 720, 600 P.2d 1268 (1979). The insurance policy here, as in *Washington Pub. Util. Dists.' Utils. Sys.,* limits payment to the good faith rendering of services. A rendering of services constitutes consideration and thereby removes the case from the realm of "gifts" prohibited by Const. art. 8, § 7. *Washington Pub. Util. Dists.' Utils. Sys.,* 112 Wn.2d at 9.

business corporations as authorized by RCW 23B.08.580.[2] Such insurance was created to fill gaps left by statutes that prohibited corporations from indemnifying directors and officers for judgments against them. *See generally* Johnston, *Corporate Indemnification and Liability Insurance for Directors and Officers,* 33 Bus. Law. 1993 (1978). The purpose of such insurance is "to protect aggressive managers who are willing to take good–faith risks in the search of profits" for the corporations they represent. Johnston, at 1993–94. By extending coverage to include a hospital district's own claims against its officers, and not just third party claims, the majority is protecting not just aggressive managers, but negligent or even reckless ones as well.

Further, even when statutory authority permits an entity to indemnify officers or directors, necessarily such indemnity does not extend to direct claims between the two. *Norwich v. Silverberg,* 200 Conn. 367, 511 A.2d 336 (1986). In *Silverberg,* the City of Norwich sued their city attorneys for malpractice, and those attorneys counterclaimed under the indemnification statute for reimbursement of any amount the court might order them to pay. Construing the statute and upholding the dismissal of these counterclaims, the court stated that, in enacting the statute, the Legislature had "created a statutory analogue for the common law

---

[2]RCW 23B.08.580 states:

"A corporation may purchase and maintain insurance on behalf of an individual who is or was a director, officer, employee, or agent of the corporation, or who, while a director, officer, employee, or agent of the corporation, is or was serving at the request of the corporation as a director, officer, partner, trustee, employee, or agent of another foreign or domestic corporation, partnership, joint venture, trust, employee benefit plan, or other enterprise, against liability asserted against or incurred by the individual in that capacity or arising from the individual's status as a director, officer, employee, or agent, whether or not the corporation would have power to indemnify the individual against the same liability under RCW 23B.08.510 or 23B.08.520."

doctrine of respondeat superior." *Silverberg,* at 375. The court continued:

> It is true that the legislature might have determined that the need to attract citizens to public service required it to go beyond respondeat superior and to provide for municipal officers and employees total immunity from liability for actions in negligence brought by their municipal employers. In our view, however, if that had been the legislature's intention, it would have been manifested by a straight–forward immunity statute rather than by the round–about system of indemnification that the defendants ask us to read into [the statute].

*Silverberg,* at 375. Similarly here, had it intended to cover claims of this kind, the Legislature could have permitted this sort of indemnification. Also, had the parties to the insurance contract intended this coverage, the insurance policy would have been drafted to include it. In effect, the majority here creates an equivalent of uninsured motorist coverage for hospital districts. That sort of innovation is the province of the Legislature, not this court.

Also, by so expanding the traditional authority of an entity to indemnify its officers, this court effectively confers immunity upon both the hospital district and its treasurer. By doing so, it allows the risk of the treasurer's defalcations to be shifted to an insurance company that had no idea, when it issued the policy, that it was writing a fidelity bond instead of an insurance contract. This is bad policy; if an entity that elects an officer can be made immune from the risk of any negligence on his part, it has little incentive to select good officers. If the officer himself is immune from the consequences of his negligence, he has little incentive to be careful.

Most important of all, the majority is announcing a principle that will apply even when the entity has no recourse, to insurance or any other source, to cover such losses. In

such circumstances, the entity would be empowered without limitation to jeopardize the public purse. This is intolerable to contemplate. I dissent.

Review denied at 116 Wn.2d 1006 (1991).