# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| COLUMBIA RIVER CARBONATES,<br>a general partnership, | ) <br> ) <br> ) | NO. 71734-1-I<br><br>DIVISION ONE |
| Appellant, | ) <br> ) | |
| v. | ) <br> ) | |
| PORT OF WOODLAND, a municipal<br>Corporation; PORT COMMISSION OF<br>THE PORT OF WOODLAND; and the<br>CRRVP LLC, a Washington limited<br>Liability company, | ) <br> ) <br> ) <br> ) <br> ) | UNPUBLISHED OPINION<br><br>FILED: June 30, 2014 |
| Respondent. | ) <br> ) <br> ) | |

LAU, J. — Columbia River Carbonates (CRC) sued the Port of Woodland and CRRVP LLC to void the Port's sale of surplus land to CRRVP. CRC alleged that the Port violated a statute governing the sale of port district real property and the constitutional prohibition on gifts of public funds. The trial court granted summary judgment dismissal in favor of the Port and CRRVP. Because CRC identifies no genuine issue of material fact, CRC and the Port are entitled to judgment as a matter of law. We affirm.

## FACTS

The Port owned two narrow strips of land (subject property) abutting the Columbia River in unincorporated Cowlitz County. The strips were situated to the south and north of an 8.06-acre recreational vehicle park (RV park) operated by CRRVP. CRRVP purchased the RV park in 2006. At that time, Mike Landels owned the lot to the south of the subject property's southern strip.[1]

The subject property was zoned MH, for heavy manufacturing. The property's southern strip accommodated an unofficial dump site. CRRVP manager Shirley Temming testified that the site was filled with old tires, railroad ties, creosote-coated pilings, appliances, batteries, broken concrete, and other construction debris. Temming considered the site an eyesore and a potential liability to her customers, especially children. She and her employees cleaned the site with the Port's permission.

In March 2007, the Port leased the subject property to CRRVP for $50 per year. The five-year term lease included a one-time renewal option. CRRVP installed a landscaped parking lot after it cleaned the southern strip.

In 2008, a survey revealed that structures on Landels' property encroached onto the southern strip. The Port agreed to a boundary line adjustment under which Landels acquired title to the encroached land. The agreement was premised on the Port's understanding that the southern strip "has never been part of the Comprehensive Plan of the Port of Woodland and is not needed for Port District purposes."

In 2009, CRRVP cooperated with the Port by agreeing to exclude Landels' newly-acquired land from the scope of its lease. The boundary line adjustment reduced

---

[1] Landels was a plaintiff below but is not a party to this appeal.

the southern strip's area to 1.35 acres. At a public meeting in late 2009, the Port agreed to offer CRRVP a new lease with an option to purchase the subject property.

In January 2010, Landels recorded a short plat subdividing his property into two lots. CRC purchased lot 2, the lot situated nearest to the southern strip.

On March 22, 2010, CRC's attorney wrote an e-mail to Port executive director Erica Rainford indicating CRC's interest in purchasing the southern strip. The e-mail stated in part:

> I understand that you will remain at your post through the end of this month. I wanted to let the Port know that CRC would be interested in purchasing the strip of property that lies to the west of the Dike Road between the RV park and Mike Landels/CRC property. Would you please put us on the list of potential purchasers should the Port decide to sell this strip? I would appreciate an opportunity to discuss this with you if you have some time.

Rainford responded that she consulted with the Port's attorney and concluded that three issues affected a potential sale to CRC: (1) CRRVP's leasehold interest, (2) a requirement that the Port "declare the property surplus," and (3) CRRVP's "'first right of refusal' on the property." She added, "This does not barr [sic] us from pursuing the sale with CRC—but these are the issues at hand." CRC's attorney replied, "We have no time line at all, merely wanted to be considered should the property ever be available for sale."

Nelson Holmberg succeeded Rainford as executive director in April 2010. During his July 2012 deposition, Holmberg testified that he first learned about this e-mail from CRC's attorney in December 2011—well after the Port finalized the sale to CRRVP.

On April 22, 2010, at a Port Commission public meeting, CRRVP submitted a written offer to purchase the subject property for $35,000.[2] The Port Commission tabled the proposal to allow Holmberg to "check into the proper steps that will need to be made before the Port can sell these two strips of property and to follow up with surveys and appraisals." Holmberg testified that the Port posted the meeting minutes on its web site. No CRC representative attended the meeting.

In November 2010, Holmberg obtained an appraisal from Integra Realty Resources. Integra appraised the southern strip at $120,000. It assumed the "highest and best use" for the southern strip was as "a single waterfront home site." It noted, "This would require a zone change; however, it is assumed that such a change would be possible at a cost to the buyer." Without the zone change, the value dropped "significantly below the value of the subject as a home site . . . ."

On December 1, 2010, Holmberg e-mailed the Integra appraisal to CRRVP agent Jay Pyle. Pyle considered the appraisal as flawed. He wrote, "We were assured by [the] Cowlitz County Assessor and the Cowlitz County Building and Planning Dept. that re-zoning to Residential would not be permitted."

Temming testified by declaration that she and Pyle met with Holmberg and a Cowlitz County planning department representative to discuss possible uses for the subject property. According to Temming, Holmberg was advised at this meeting that the assessor's office and planning department considered the subject property an

---

[2] The record shows that CRRVP initially offered $30,000 for the southern strip. CRRVP then offered an additional $5,000 for the northern strip.

"orphan strip," and that the planning department believed "a boundary line adjustment to incorporate it into the RV park property would be favorable . . . ."

Holmberg testified that he met with CRC on March 8, 2011, to learn about CRC's plan to build a marine terminal on the Columbia River. Holmberg said he did not alert CRC to a possible sale of the subject property. When asked why he "didn't talk to CRC about the subject property," Holmberg responded, "I don't recall my explanation. I just know I didn't do it, and failed to do my job on that one." He denied that any of the Port commissioners instructed him "not to talk to CRC" about the potential sale.

On March 11, 2011, Holmberg obtained a second appraisal from North By West. North By West appraised the subject property at $65,000—about half the value proposed by Integra. Unlike Integra, North By West assumed the property would be used for development "in conjunction with adjoining tracts also zoned for heavy industrial uses." Holmberg e-mailed the appraisal to CRRVP.

On March 17, 2011, the Port Commission held a public meeting and hearing to debate whether to surplus the subject property. Holmberg testified at his deposition that he was "sure there was a news release" announcing the public hearing. Pyle and Temming attended the public hearing. No CRC representative attended.

During the public meeting, Holmberg told the Port Commission that the subject property could not "be a parcel on its own." He explained, "Well, it's—one, it's too small for any—any heavy manufacturing that could possibly exist. Two, there's just not the possibility that heavy manufacturing is going to come and sit down right next to a[n] RV park." He also noted a zoning change would require a "significant expense." The commission approved a motion to surplus the property.

On April 21, 2011, at a public meeting, the Port Commission formally approved a resolution declaring the subject property surplus. At the same public meeting, the commission agreed to sell the subject property to CRRVP for $44,000. The Port asserts, and CRC does not dispute, that the meeting agenda appeared on the Port's web site prior to the meeting. No CRC representative attended the meeting.

According to an April 20, 2011 memorandum prepared by Holmberg, the $44,000 sale price reflected North By West's $65,000 appraisal price, discounted (1) by approximately five percent to account for the absence of municipal water and sewer connections, (2) by $17,000 to account for CRRVP's tenant improvements, and (3) by $1,000, for reasons not made clear by the record.[3] Regarding the $17,000 credit for tenant improvements, Holmberg wrote:

> [T]he port recognizes the cleanup of trash, removal of blackberries and improvement (while the property has been under a lease from the port) including a gravel parking area on the property, paid for and maintained by [CRRVP] which amounts to approximately $17,000 (as reported by CRRVP) as a tenant improvement and includes that amount in the offered selling price below.

Following the sale, CRRVP obtained a quitclaim deed.

In March 2012, CRC sued the Port and CRRVP. CRC alleged four causes of action: (1) illegal designation of surplus property under RCW 53.08.090, (2) illegal sale of port district property under RCW 53.08.090, (3) violation of the Open Public Meetings Act, chapter 42.30 RCW, and (4) unconstitutional gift of public funds.

---

[3] Holmberg's typewritten memorandum states, "With these considerations, port staff recommends an asking price of $45,000 for the property . . . ." A handwritten note states, "$44,000 Boundary Line Adjustment." At his deposition, Holmberg testified, "And then I suggested the price of $45,000, and they asked for 44, and I felt like it was close enough to where we were."

CRRVP moved for summary judgment. It argued that the Port had authority to sell the subject property and followed all statutory requirements. It argued in the alternative that it had a right to enforce the sale as a bona fide purchaser for value. The Port joined the motion. CRC filed a cross motion for partial summary judgment on its illegal surplus designation and illegal sale claims. The trial court granted CRRVP's motion in part and denied CRC's cross motion. This resulted in dismissal of CRC's illegal surplus designation, illegal sale, and Open Public Meetings Act claims.

CRRVP subsequently moved for summary judgment on the remaining unconstitutional gift issue. The trial court granted the motion and dismissed CRC's complaint with prejudice. CRC appeals.

## ANALYSIS

CRC appeals the trial court's grant of summary judgment dismissal in favor of CRRVP and the Port. For the reasons discussed below, we affirm.

On appeal from an order granting summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is one that affects the outcome of the litigation." Owen v. Burlington N. Santa Fe R.R. Co., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005).

### Illegal Surplus Designation

CRC first challenges the summary judgment dismissal of its claim that the Port Commission "improperly designated the Subject Property as surplus." It contests the surplus designation on two grounds: (1) failure to provide public notice of the March 17,

2011 surplus hearing and (2) failure to establish that the subject property was "no longer needed for district purposes" under RCW 53.08.090(1), the statute governing the sale of port district property.

CRC first challenges the sale based on the Port's alleged failure to provide public notice of the March 17, 2011 meeting at which the Port approved the surplus motion. It does not contend that any statute required the Port to hold a public meeting. Instead, it argues that once the Port decided to hold a public meeting, it was required to follow the "standard practice of posting notice"—specifically, "posting notice in The Daily News."[4] Br. of Appellant at 22. This claim fails because CRC cites no controlling authority requiring a public meeting or notice of the public meeting. It thus fails to identify a genuine issue of material fact.

The relevant statute requires public notice only when the property to be sold is part of the port district's comprehensive plan and, even then, only when the district modifies the plan to reflect the surplus designation:

> A port district may sell and convey any of its real or personal property valued at more than ten thousand dollars when the port commission has, by resolution, declared the property to be no longer needed for district purposes, but no property which is a part of the comprehensive plan of improvement or modification thereof shall be disposed of until the comprehensive plan has been modified to find the property surplus to port needs. The comprehensive plan shall be modified only after public notice and hearing provided by RCW 53.20.010.

---

[4] CRC clarifies it is "arguing that after the Port decided that it would be prudent to hold such a public hearing, it failed to comply with notification requirements of public meetings." Reply Br. of Appellant at 26.

RCW 53.08.090(1) (emphasis added).[5] CRC identifies no ambiguity. And it acknowledges that the subject property was not part of the Port's comprehensive plan.[6] It follows that RCW 53.08.090(1)'s public notice requirement does not apply in this case.

CRC next argues, "The subject property was not surplus as statutorily defined." Br. of Appellant at 23 (capitalization and emphasis omitted). This claim involves RCW 53.08.090(1)'s requirement that the Port declare, by resolution, that the property to be sold is "no longer needed for district purposes." RCW 53.08.090(1). CRC identifies no genuine issue of material fact.

CRC acknowledges that the Port declared, by resolution, that the subject property was no longer needed for district purposes.[7] It merely disputes the truthfulness of that statement. It argues that the Port "abused its discretion by determining that the

---

[5] A statute provides, "All proceedings of the port commission shall be by motion or resolution recorded in a book or books kept for such purpose, which shall be public records." RCW 53.12.245. The Port argues, "There is no requirement in the statute that resolutions be adopted at public hearing, rather only requiring that the resolution be maintained as a public record." Port's Resp't's. Br. at 21. CRC offers no reply.

[6] CRC's opening brief states, "The statute [RCW 53.08.090] contains other unique requirements applicable to Port property when the property is part of the Port comprehensive plan or within an industrial development district, but the Subject Property was not subject to those requirements." Br. of Appellant at 19 n.18.

[7] The Port adopted Resolution 381. The Port justified its surplus decision by explaining (1) "the port staff, in working with the Cowlitz County Assessor's Office and the Cowlitz County Office of Building and Planning has determined that the property has no usefulness to the port or any other entity besides CRRVP or Mike Landels," (2) "Port Commissions in the State of Washington are authorized to declare property surplus if it has no apparent use to the port," (3) "the property in question is zoned heavy manufacturing and is—according to the Cowlitz County Department of Building and Planning—too small to accommodate a heavy manufacturing facility," and (4) "the property in question is subject, on its own merits, to a number of setback, ordinary high water and other infrastructure regulations, as well as zoning regulations, that would make it difficult for any other property owner to use the property, according to the Cowlitz County Department of Building and Planning."

Subject Property was surplus," and that the surplus designation "was obviously arbitrary and capricious." Br. of Appellant at 23.

CRC cites no controlling authority establishing that we may review the merits of a port district's surplus designation under an abuse of discretion standard, or an arbitrary and capricious standard. No material fact issue exists.

Illegal Sale

CRC next argues that the Port "violated its trusteeship duties and abused its discretion by selling the subject property at a significant discount to fair market value." Br. of Appellant at 24 (boldface omitted). It contends the Port was required to "maximize the return on any sale of public property that has been surplused," to sell the property at a price equal to the average appraisal value, and to "use some reasonable marketing approach unless the Subject Property was sold at the price in an appraisal." Br. of Appellant at 25-29. These claims depend on CRC's assumption that "[t]he Port owes both trustee and fiduciary duties to the public when selling real property in order to ensure full and complete protection for public assets." Br. of Appellant at 24 (boldface omitted). Because that bare assumption lacks merit, no material fact issue exists.

CRC cites no controlling case authority to establish that the Port holds its property—in this case, the subject property—in trust for the public's benefit. For that proposition, it cites (1) Robert F. Hauth, Washington Ports, Knowing the Waters: Basic Legal Guidelines for Port District Officials, an attorney-authored document published by the Washington Public Ports Association (WPPA); (2) Resolution 378, a document adopted by the Port Commission on March 17, 2011; and (3) RCW 42.17A.001, a

-10-

statute declaring the policy underlying a campaign finance law known as Initiative 276. None of these sources controls.

CRC first relies on the WPPA publication, which states in relevant part:

As a rule, a port district may sell unneeded port district property, both personal and real property, at its discretion and without calling for competitive bidding. However, public bidding or other procedures may be required by statute, depending upon the kind or situation of the property, and sound business discretion must be exercised in all cases.

It contends the WPPA publication authoritatively establishes that the Port was required to exercise "sound business discretion," the sale at issue here was a matter of discretion, and the proper standard for evaluating discretionary port district action comes from administrative law, which defines abuse of discretion as discretion exercised in an "'arbitrary and capricious manner.'" Br. of Appellant at 20 (quoting Conway v. Dep't of Soc. & Health Servs., 131 Wn. App. 406, 419, 120 P.3d 130 (2005)). This claim fails. The WPPA publication lacks the force of law. As CRC acknowledges, it is at most a source of "commentary." Reply Br. of Appellant at 24.

CRC next relies on Resolution 378, which states in relevant part that the Port Commission "acts in trusteeship for port owners who are the citizens of the Woodland Port District, and serves as the legitimizing connection between this base and the organization." Nothing in Resolution 378 shows that the Port intended to hold the subject property in a legally enforceable trust. "[T]here must be strong evidence of an intent to create a trust, such as specific direction from the legislature, before we impose trust or fiduciary duties on an agency." Cedar River Water & Sewer Dist. v. King County, 178 Wn.2d 763, 778, 315 P.3d 1065 (2013). Aside from Resolution 378's reference to "trusteeship," CRC cites no evidence of a trust.

-11-

CRC relies on RCW 42.17A.001, which states in relevant part, "It is . . . the public policy of the state of Washington: . . . (2) That the people have the right to expect from their elected representatives at all levels of government the utmost of integrity, honesty, and fairness in their dealings." RCW 42.17A.001.[8] This claim fails because nothing in chapter 42.17A RCW, which governs disclosure of campaign contributions, authorizes this court to void a port district's sale of surplus property.

CRC also argues, "Proper Port purposes, as declared by the Legislature, are 'industrial development or trade promotion.'" Br. of Appellant at 23. It relies on article VIII, section 8, of the Washington State Constitution, which provides:

> The use of public funds by port districts in such manner as may be prescribed by the legislature for industrial development or trade promotion and promotional hosting shall be deemed a public use for a public purpose, and shall not be deemed a gift within the provisions of section 7 of this Article.

CRC cites no authority applying this provision to a sale under RCW 53.08.090(1).

Under RCW 53.08.090(1), the Port must declare, by resolution, that the property to be sold is "no longer needed for district purposes." The record shows no genuine dispute as to whether the Port complied with this requirement.[9]

Open Public Meetings Act

CRC alternatively challenges the sale on the ground that the Port violated the Open Public Meetings Act (OPMA). It contends the trial court erroneously dismissed

___

[8] We question whether a cognizable cause of action is available under this provision.

[9] CRC filed a RAP 10.8 statement of additional authorities citing RCW 53.08.260 and RCW 53.08.270. These citations are not persuasive. We note that CRC submitted argument along with its citations. RAP 10.8 provides, "The statement should not contain argument, but should identify the issue for which each authority is offered."

this claim "sua sponte"[10] on CRRVP's first summary judgment motion. Br. of Appellant at 34. It argues the "sua sponte" ruling was unfair because CRRVP "nowhere mentioned OPMA" in its motion and thus left CRC without "notice or 'a full and fair opportunity to ventilate'" the claim. Br. of Appellant at 34-35. As for the remedy, it argues this court should "send the OPMA claim back to be heard on the merits."[11] Br. of Appellant at 36.

The record fails to support CRC's claim that it lacked reasonable notice. It shows CRC received actual notice and a full and fair opportunity to be heard by the court. CRRVP's unambiguous summary judgment motion sought "dismissal of the Plaintiffs' Complaint with prejudice." CRRVP's summary judgment reply brief argued:

> CRRVP has moved for summary judgment on all issues in this case, and respectfully requests that the Court dismiss the Plaintiffs' Complaint with prejudice. CRC argues that the issue of a violation of the Open Public Meetings Act remains as an issue, but that is not the case. CRC has presented no facts which support this theory.

Indeed, the record shows CRC presented no facts to support its claim that the Port violated the OPMA when it allegedly approved the subject property's sale in an executive session. But even if we assume CRC was surprised by the OPMA summary

---

[10] According to Law.com, "sua sponte" is "Latin for 'of one's own will,' meaning on one's own volition, usually referring to a judge's order made without a request by any party to the case." http://dictionary.law.com/Default.aspx?selected=2032 (last visited June 20, 2014).

[11] CRC clarifies that this issue "goes to whether CRC was provided with an adequate opportunity to develop its claim." Reply Br. of Appellant at 19.

judgment motion, it failed to move for a continuance of the summary judgment hearing under CR 56(f).[12]

Finally, at a hearing, the parties argued the merits of the OPMA claim. CRC's counsel argued that the claim necessarily survived based on CRRVP's failure to brief the issue.[13] CRRVP's counsel responded by challenging the claim's merit.[14] At a hearing on proposed orders, CRRVP's counsel argued, "There are no facts to support a violation of the Open Public Meetings Act . . . ." Report of Proceedings (RP) (Aug. 17, 2012) at 3. CRC's counsel responded that the claim failed premised on lack of briefing. He added, "[W]e think that we should at least keep that cause of action open for—and see if we can establish sufficient evidence of a violation." RP (Aug. 17, 2012) at 6. The trial court ruled, "The Open Public Meeting matter, there was no proof of a violation.

---

[12] CR 56(f) states, "When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." (Boldface omitted.) The record indicates CRC engaged in presummary judgment discovery. It deposed every Port commissioner, Port executive director Holmberg, and Port auditor Carol Moore. It also obtained all Port meeting documents related to the property sale.

[13] The record shows CRRVP's opening and reply briefs addressed all the claims asserted by CRC, including the OPMA claim. CRRVP's briefs also included citations to the record evidence in support of its summary judgment motion.

[14] At the summary judgment hearing, CRRVP's counsel argued, "Regarding the Open Public Meetings Acts issue, there is nothing in the record that indicates there were any decisions made in executive sessions." Report of Proceedings (RP) (July 27, 2012) at 27. He added, "The references made by Mr. Holmberg to those executive sessions show that they were talking about the status of appraisals, and the—and that was it. And that is allowed under the Open Public Meetings Act in executive session." RP (July 27, 2012) at 27.

There's no material issue of fact in that regard."[15] RP (Aug. 17, 2012) at 8. It dismissed the claim with prejudice.

The record fails to establish CRC's claim that the court ruled sua sponte. The court ruled in response to CRRVP's motion, the parties' briefing, and the arguments of counsel over the course of two hearings. As noted above, CRC never moved to continue the summary judgment hearing in order to conduct discovery to "see if we can establish sufficient evidence of a violation." RP (Aug. 17, 2012) at 6. The trial court properly granted summary judgment dismissal on CRC's OPMA claim.

For the first time in its reply brief, CRC contends CRRVP failed to meet its initial burden to demonstrate the absence of any genuine issue of material fact. It argues, "Even the most liberal interpretation of the moving party's burden under summary judgment would find CRRVP's lack of evidence and argument to be insufficient." Reply Br. of Appellant at 23. We decline to address CRC's untimely claim.[16] Cowiche Canyon

---

[15] A defendant moving for summary judgment may meet the initial burden of proof by showing that there is an absence of evidence to support the nonmoving party's case. Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co., 176 Wn. App. 168, 179, 313 P.3d 408 (2013), review denied, 179 Wn.2d 1019 (2014). When a defendant moves for summary judgment and satisfies the initial burden of establishing the absence of a material fact issue, the inquiry shifts to the plaintiff. If the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, the court should grant the defendant's motion for summary judgment. Burton v. Twin Commander Aircraft LLC, 171 Wn.2d 204, 222-23, 254 P.3d 778 (2011); see also CR 56(e).

[16] In any event, this assertion lacks merit. See supra note 13.

Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").[17]

### Unconstitutional Gift of Public Funds

CRC argues that the sale violated article VIII, section 7 of the Washington State Constitution. That provision generally precludes gifts of public funds:

> No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

CRC asks this court to "steady the erosion of the Gift Clause by holding that the 'sweetheart deal' in this case justifies judicial scrutiny of the facts to determine whether a Constitutional violation has occurred." Reply Br. of Appellant at 2. For the reasons below, we affirm the trial court's summary judgment dismissal of this claim.

"In adopting article 8, section 7, and its counterpart, article 8, section 5, the framers intended to prevent the harmful 'effects on the public purse of granting public subsidies to private commercial enterprises, primarily railroads.'" City of Tacoma v. Taxpayers of Tacoma, 108 Wn.2d 679, 701, 743 P.2d 793 (1987) (footnote omitted) (quoting City of Marysville v. State, 101 Wn.2d 50, 55, 676 P.2d 989 (1984)). "'The manifest purpose of these provisions . . . is to prevent state funds from being used to benefit private interests where the public interest is not primarily served.'" CLEAN v.

---

[17] CRRVP contends that even if the Port somehow violated RCW 53.08.090(1) or the OPMA, the trial court correctly dismissed CRC's surplus designation, illegal sale, and OPMA claims premised on CRRVP's status as a bona fide purchaser for value. Given our disposition discussed herein, we need not reach this issue. We also need not reach CRC's claim that the OPMA claim "is clearly substantive in nature and cannot be defeated by the BFP defense." Br. of Appellant at 33.

State, 130 Wn.2d 782, 797, 928 P.2d 1054 (1996) (quoting Japan Line, Ltd. v. McCaffree, 88 Wn.2d 93, 98, 558 P.2d 211 (1977)). "[T]he Supreme Court has increasingly narrowed the application of this prohibition in order to more precisely conform to 'the evils the framers sought to prevent.'" Northlake Marine Works, Inc. v. City of Seattle, 70 Wn. App. 491, 507, 857 P.2d 283 (1993) (quoting Taxpayers of Tacoma, 108 Wn.2d at 702).

As the party alleging a violation, CRC bears the burden to show that the sale of the subject property to CRRVP amounted to "'a transfer of property without consideration and with donative intent.'"[18] King County v. Taxpayers of King County, 133 Wn.2d 584, 597, 949 P.2d 1260 (1997) (quoting Gen. Tel. Co. v. City of Bothell, 105 Wn.2d 579, 588, 716 P.2d 879 (1986)). "'Absent a showing of donative intent or gross inadequacy, trial courts should only apply a legal sufficiency test, under which a bargained-for act or forbearance is considered sufficient consideration.'" CLEAN v. City of Spokane, 133 Wn.2d 455, 469, 947 P.2d 1169 (1997) (quoting City of Tacoma, 108 Wn.2d at 703).

CRC contends the Port transferred the subject property to CRRVP with donative intent and with a grossly inadequate return. It relies on the following evidence:

- The Port sold the subject property on April 21, 2011, for $44,000. CRC's expert, real estate appraiser Darin Shedd, offered a declaration stating, "As of June 14, 2011, it is my opinion that the fair market value of the subject property was $206,000."

---

[18] Our Supreme Court has written that no "gift of public funds has been made" if "the funds are being expended to carry out a fundamental purpose of the government." City of Spokane, 133 Wn.2d at 469. The Port and CRRVP do not contend the sale at issue here fulfilled a fundamental government purpose.

- CRRVP's March 2007 lease contained a clause releasing the Port from any obligation to reimburse CRRVP for "improvements, alterations or repairs" to the subject property. In April 2011, the Port reduced the property's sale price by $17,000 to account for CRRVP's tenant improvements.

- The Port never contacted CRC or Landels to evaluate their respective alleged interests in purchasing the subject property.

- Holmberg wrote in his April 20, 2011 memorandum that he was recommending "an asking price of $45,000." The final sale price was $44,000.

- CRRVP offered to pay for the entire cost of a survey. The Port split the cost.

This evidence, viewed in the light most favorable to CRC (summarized above), fails to create a genuine issue of material fact as to either donative intent or grossly inadequate return. The Port Commission agreed on the $44,000 sale price at a public meeting after negotiating with CRRVP for more than a year. At the time of the sale, CRRVP held a long-term lease worth only $50 per year to the Port. CRRVP's initial offer was $35,000.

Further, the Port Commission acted on information that the subject property was useful only to adjoining landowners. CRRVP submitted its written purchase offer at a public meeting. The commission's surplus and sale decisions also occurred at public meetings. No CRC representative attended these meetings. On this record, the $44,000 sale price reflects a properly negotiated transaction, not an unconstitutional gift.

CRC relies on State ex rel. O'Connell v. Port of Seattle, 65 Wn.2d 801, 399 P.2d 623 (1965), and City of Bellevue v. State, 92 Wn.2d 717, 600 P.2d 1268 (1979), to argue that the Port's "[u]nobligated" $17,000 credit for tenant improvements evidences donative intent. Br. of Appellant at 41. Neither case controls.

-18-

In O'Connell, the court held that the Port of Seattle violated former article VIII, section 7 when it used public funds to "treat shippers and other private individuals to free meals and refreshments" in what the Port described as "promotional hosting."[19] O'Connell, 65 Wn.2d at 802. Key was the fact that prospective customers received the meals and drinks without "any contract with the Port of Seattle" and, thus, the customers had no legal obligation to reimburse the Port. O'Connell, 65 Wn.2d at 804.

In City of Bellevue, the court upheld an ordinance allowing the city to reimburse public employees for tips paid during business meals. The court reasoned that because tipping was basically obligatory, the act of tipping provided no evidence of donative intent. And unlike meals and drinks purchased for prospective customers, tips constituted "payment for service rendered." City of Bellevue, 92 Wn.2d at 721. The court noted, "It is the presence of consideration in recognizing that the tip is connected to the service rendered that distinguishes this case from O'Connell." City of Bellevue, 92 Wn.2d at 721.

CRC cites no relevant authority that the Port's decision to credit the $17,000 for tenant improvements under these circumstances constitutes an impermissible gift of public funds.[20]

---

[19] A constitutional amendment changed this rule. Article VIII, section 8 provides, "The use of public funds by port districts in such manner as may be prescribed by the legislature for industrial development or trade promotion and promotional hosting shall be deemed a public use for a public purpose, and shall not be deemed a gift within the provisions of section 7 of this Article."

[20] We note that each of the Port commissioners who approved the sale provided deposition testimony evidencing the absence of donative intent. CRC objected to the court's consideration of this evidence on grounds of an impermissible opinion on an

CRC also argues that Holmberg failed to investigate its interest in the property. CRRVP acknowledges that Holmberg made a mistake.[21] On this bare record, Holmberg's mistake fails to establish donative intent on the part of the Port Commission.

CRC also claims that Pyle asked Holmberg in an October 2010 e-mail not to mention CRRVP's interest in the subject property at an upcoming Port Commission meeting. Holmberg responded, "All I planned to do in the CRRVP update was to let the commission know we've been working on the road to the north of your property, and that I expect to have the appraisals very soon." He added, "I would be happy to strike that update and have private conversations with the individual commissioners instead." Pyle replied, "I think that I'd prefer a Private update. Just to keep the chatter down." CRC's opening brief barely addresses the relationship of this evidence to the issue of donative intent.[22] This argument is inadequately briefed. RAP 10.3(a)(6); Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). In any event, nothing in the e-mail exchange creates a fact question as to whether the commission acted with donative intent. Pyle e-mailed Holmberg more than six months before the Port sold the subject property. The record shows no connection between this

ultimate issue. Even if we disregard this evidence, our resolution of the gift of public funds issue is unaffected.

[21] CRRVP states, "The Port commissioners asked the Port Director [Holmberg] to see if CRC was interested in purchasing the property, but he mistakenly failed to do so." CRRVP's Resp't's. Br. at 27.

[22] It appears that CRC relied on the above-described evidence primarily to establish collusion between the Port and CRRVP for purposes of CRRVP's bona fide purchase defense. CRC argues, "Simply stated, the undisputed fact that CRRVP purposely sought to 'keep the chatter down' should automatically disqualify it from asserting the BFP defense." Br. of Appellant at 31. As noted above, we need not reach the bona fide purchaser issue.

e-mail exchange and the Port Commission's actions leading up to the sale of the subject property.

CRC also relies on Casa del Rey v. Hart, 110 Wn.2d 65, 750 P.2d 261 (1988), Zucker v. Mitchell, 62 Wn.2d 819, 384 P.2d 815 (1963), and Buckerfield's Ltd. v. B.C. Goose & Duck Farm Ltd., 9 Wn. App. 220, 511 P.2d 1360 (1973), to argue that the Port received a grossly inadequate return. These cases are unpersuasive because none analyzed the adequacy of consideration for purposes of article VIII, section 7.

Our Supreme Court's decision in King County is persuasive on the question of gross inadequacy under article VIII, section 7. There, a public facilities district leased a publicly-funded baseball stadium to the Seattle Mariners. A group of citizen taxpayers claimed the lease amounted to an unconstitutional gift, premised on donative intent and gross inadequacy. A majority of the court rejected the argument, relying in part on evidence that the lease required the Seattle Mariners to pay $700,000 annual rent for 20 years. Justice Sanders dissented, citing the expert's opinion that $700,000 annual rent was "50 times less than the fair market rent." King County, 133 Wn.2d at 634 (Sanders, J., dissenting). Unpersuaded by this expert opinion, the majority declined to inquire into the adequacy of consideration but employed the well-settled legal sufficiency test.

CRC's "sweetheart deal" charge falls within a similar claim asserted by the taxpayers in King County. On that point, the court reasoned:

> At its core, the Taxpayers' argument is the District and the County made a bad deal. While that may or may not be true, "The wisdom of the King County plan is not for the consideration of this court—its constitutionality is." Louthan v. King County, 94 Wn.2d 422, 427, 617 P.2d 977 (1980). The Taxpayers have failed to demonstrate a constitutional infirmity under CONST. art. VIII, §§ 5 and 7.

-21-

King County, 133 Wn.2d at 601. It also noted, "An incidental benefit to a private individual or organization will not invalidate an otherwise valid public transaction." King County, 133 Wn.2d at 596.

In City of Spokane, citizens groups challenged an ordinance providing public support for a new parking garage in downtown Spokane. In rejecting the challenge, the court declined to void the transaction. "Although Appellants may view the transaction as an unwise use of public funds that unduly benefits the Developers, the wisdom of the plan is not for this court to consider." City of Spokane, 133 Wn.2d at 470.

At its core, CRC argues that the Port gave CRRVP a "sweetheart deal." Br. of Appellant at 44. Under King County and City of Spokane, we decline to question the wisdom of the sale under the circumstances of this case. CRRVP achieved price reductions through legitimate negotiations with the Port. On this record, no reasonable trier of fact could find that the Port sold the subject property to CRRVP with donative intent or that it received a grossly inadequate return.

The remaining question is whether the consideration underlying the sale meets the legal sufficiency test. City of Spokane, 133 Wn.2d at 469. On this record, we conclude the sale meets this test. CRC's constitutional challenge fails.

### Attorney Fees on Appeal

CRC requests attorney fees on appeal pursuant to the OPMA, which permits the recovery of attorney fees and costs by "[a]ny person who prevails against a public agency in any action in the courts for a violation of [the OPMA] . . . ." RCW 42.30.120(2). Because the claim fails, we decline the attorney fee request.

-22-

71734-1-I/23

## CONCLUSION

For the reasons discussed above, we affirm the trial court's order granting summary judgment dismissal in favor of the Port and CRRVP.

WE CONCUR:

-23-